## Evans *versus* Erie County.

1. The Commonwealth by Act of Assembly granted to the borough of Erie the "3d section" of certain lands, reserving 100 acres to be selected by commissioners for a poor-house for Erie county. The commissioners located the 100 acres "at the south-west corner" of section 3, leaving a strip between its west line and the west line of the section. The strip belonged to the borough of Erie.

2. Evans was in possession of the strip at the passage of the act; the Statute of Limitations began to run in his favor against Erie from that time.

3. The statute runs against a county or other municipal corporation.

4. *Nullum tempus occurrit reipublicæ*, applies to the sovereign only.

October 21st 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Erie county :* No. 10, to October and November Term 1870.

This was an action of ejectment, brought October 27th 1864, by the County of Erie against James Evans, for a piece of land "131.6 perches in length by 60 feet in width, situated between the west line of the 100 acres selected by the commissioners of the county of Erie and the west line of the third section of the town of Erie, and in the said third section of the town of Erie."

The plaintiffs claimed that the strip was part of the tract selected by the commissioners for the use of the poor-house.

By the 13th section of the Act of April 3d 1792 (3 Smith L. 74), there was reserved for the use of the Commonwealth, "at Presque Isle, * * * a tract extending 8 miles along the shore of the lake and 3 miles in breadth." By the Act of 18th of April 1795 (Id. 234), the governor was authorized to appoint commissioners to survey "within" the above tract, 1600 acres for town-lots and 3400 for out-lots, with streets, lanes and alleys for the town of Erie, and "reservations for public uses." The commissioners laid out the town of Erie and the "reserve" tract adjoining it on the west. The town was laid out in lots and streets in three sections, numbered 1, 2 and 3, beginning from the east, the west line of No. 3 being coincident with the east line of the "reserve" tract.

On the 20th of October 1815, a patent for the reserve tract was issued to Conrad Brown; the tract was described as No. 16, bounded on the east by the out-lots of the town of Erie.

The following act was passed the 8th of April 1833, Pamph. L. 243 :—

[Evans v. Erie Co.]

"The tract of land now owned by the Commonwealth of Pennsylvania, on the bay of Presque Isle, on Lake Erie, and known as the third section of in and out lots of the town of Erie, the streets of which are hereby vacated, be and the same is hereby granted to the borough of Erie, to construct a canal-basin in the bay of Presque Isle, opposite the borough of Erie; and the burgess and town council of the said borough for the time being shall, as soon as conveniently may be, lay out the said third section in lots or tracts as to them may seem best, having regard to the sale and settlement of said section, and expose the same separately to the highest and best bidder or bidders, and make to the purchaser or purchasers of said lots or tracts a good and sufficient deed in fee simple, and the said burgess and town council shall apply the money arising therefrom towards erecting the canal-basin aforesaid: Provided that one hundred acres of the said land be reserved for the use of a poor-house for the county of Erie, to be selected by those persons appointed by the commissioners of Erie county for that purpose."

The commissioners selected and laid out 100 acres in the southwest corner of the 3d section of the town of Erie for the use of a poor-house, and a poor-house was erected on it. On the 12th of November 1845, Conrad Brown conveyed to Catharine Evans, the wife of the defendant, the reserve tract No. 16, "bounded on the east by the out-lots of the town of Erie."

On the 21st of April 1864, the defendant took out a warrant for the strip in dispute, paid the purchase-money and had it surveyed.

Another act was passed May 2d 1864, Pamph. L. 680, which recited that the commissioners appointed under the Act of 1833 in locating the 100 acres left a strip 131.6 perches in length by 60 feet in width between the west line of the land selected and the west line of said 3d section," and that "title to the said piece of land is in the Commonwealth," and enacted that "all the title and interest of the Commonwealth, to and in the piece or strip of land, 131 perches and 6 10ths of a perch in length by 60 feet in width, situated between the west line of the 100 acres selected by the persons appointed by the commissioners of the county of Erie, and the west line of the 3d section of the town of Erie, be and the same are hereby transferred to the county of Erie, to form a part of the poor-house tract of said county; provided that nothing contained in the act shall be held to interfere with vested rights."

On the 23d of May 1864, a patent issued to the defendant for the strip in dispute.

Another act was passed May 3d 1866, Pamph. L. 1072, as follows:—

"The patent heretofore issued to James Evans, for a strip of land, 60 feet wide on the east side of Erie reserve tract, No. 16, which strip has been claimed and occupied by said Evans, and

those under whom he claims, for over forty years as a part of his farm in Millcreek township, Erie county, is hereby ratified and confirmed, and shall have the same force and effect as a patent issued for land subject to settlement, improvement and sale."

On the trial, December 4th 1867, the parties respectively gave in evidence these facts, &c.

Samuel Low testified for the plaintiff that twelve years previously he had run a line north of this piece, when he came to Evans's land he was about 60 feet west of his fence, and found another line 60 feet east; this line was the line of Evans's fence produced north.

W. Benson, who ran the survey for the directors of the poor, found north of the poor-house tract, a fence 60 feet east from the east line as defendant claimed.

Thomas Willis testified that in 1825 Brown (defendant's predecessor) had a field cleared and a fence on the west side of the poor-house tract as then understood: " there was the same fence then that there is now, the fence is about 6 feet on Evans, giving the poor-house 100 acres." Section 3 was not then cleared.

G. Sherwin testified that by a measurement which he made, the section line was 1.1 perches east of defendant's fence * * * same field occupied by Brown and Evans ever since; the fence has never been moved."

The defendant's points with their answers were:—

" 1. The Act of April 8th 1833 granting 3d section of the town of Erie to the borough of Erie, divested the interest of the commonwealth in said section and vested right or title to said section in the borough of Erie; and the Act of May 2d 1864 did not give any title to plaintiff for the land in dispute; therefore the verdict should be for defendant."

" To the 1st point we reply, that the Act of April 8th 1833 did not give the land in dispute to the borough of Erie. If it is part of section 3 it was reserved for the use of the poor of Erie county."

" 2. The defendant, by over forty years' peaceable and adverse possession, by paying the Commonwealth for the land, and by his patent for said land, had vested rights in said land at the passage of the Act of May 2d 1864, and therefore plaintiff cannot recover, for that would interfere with such rights."

" 4. The defendant having had continuous possession for over thirty years, the statutory presumption is, that the Commonwealth had parted with her title as between the parties, and therefore plaintiff cannot recover.

" 5. The Act of 1833 granted the 3d section to the borough of Erie, and the defendant and Conrad Brown, under whom he claims, have had possession (continuous and adverse) of the land for over forty years, which would give him a good title as against the borough of Erie, and the state cannot divest defendant of the benefit of his title by possession, by taking the land from the

[Evans v. Erie Co.]

borough of Erie and giving it to plaintiff, and therefore plaintiff cannot recover."

"We answer the defendant's 2d, 4th and 5th points by saying there was no sufficient evidence given in the case to raise the question there propounded."

"3. If the court refuse to charge as requested in the 1st and 2d points, then the court is requested to charge that the Act of May 3d 1866 legalizes and perfects the title of defendant to all lands alleged by plaintiff to be lying between his land (reserve tract) and the poor-house farm, and therefore the plaintiff cannot recover."

Answer: "We regard the special legislation on both sides respecting this land as having originated in mistake of the facts, and therefore valueless in settling the question of title, and this answers the defendant's 3d point in the negative."

The court also charged:—

* * * "If you believe the evidence of the subject as to the location of the west line of section 3 of the town of Erie, there can be no vacant land between the defendant's out-lot or reserve tract and the west line of section 3 of the Erie town plot subject to settlement.

"The land in dispute must, therefore, be part of section 3 in the original town plot." * * *

The verdict was for the plaintiff.

The defendant moved in arrest of judgment, "because there is no sufficient description on record of the land claimed by the plaintiff." The motion was denied and judgment entered on the verdict.

The defendant took out a writ of error and assigned for error the answers to his points, the part of charge given, and overruling the motion in arrest of judgment.

*Gunnison* and *McCreary*, for plaintiff in error.—Whether the land in dispute was part of the poor-house tract, should have been left to the jury: Garrett v. Gonter, 6 Wright 143; Bank of Pittsburg v. Whitehead, 10 Watts 397. Inferences from facts are for the jury: Wenrick v. Heffner, 2 Wright 207; Mather v. Clark, 1 Watts 491. The marks on the ground constitute the boundary: Hall v. Tanner, 4 Barr 244. The Statute of Limitations operates against a grantee of the Commonwealth although it may be a county: McCombs v. Rowan, 9 P. F. Smith 414; Rung v. Shoenberger, 2 Watts 23; Susquehanna Co. v. Deans, 9 Casey 131; Glover v. Wilson, 6 Barr 290; Cincinnati v. Presbyterian Church, 8 Ohio R. 298; Same v. Evans, 5 Ohio State R. 594. After thirty years' possession the title is presumed to be out of the Commonwealth: Act of April 27th 1855, § 6, Pamph. L. 369,

16 P. F. SMITH—15

Purd. 654, pl. 10.  The description in the writ was *too* indefinite : Hunt *v.* McFarland, 2 Wright 69.

*J. H. Walker*, for defendant in error.—Reserved lands are not open to settlement : Hall *v.* Tanner, 4 Barr 246 ; Thompson *v.* Johnson, 6 Binney 68 ; Sergeant's Land Laws 153, 169.

The opinion of the court was delivered, January 3d 1871, by

SHARSWOOD, J.—This was an action of ejectment to recover possession of a tract or strip of land described by the plaintiffs in their writ as " one hundred and thirty-one perches and six-tenths of a perch in length by sixty feet in width, situated between the west line of the one hundred acres selected by the commissioners of the county of Erie and the west line of the third section of the town of Erie, and in the said third section of the town of Erie."

The plaintiffs gave in evidence an Act of Assembly, passed April 8th 1833, Pamph. L. 243, by which the legislature granted to the borough of Erie " the tract of land now owned by the Commonwealth of Pennsylvania, on the bay of Presque Isle on Lake Erie, and known as the third section of in and out lots of the town of Erie," with a proviso " that one hundred acres of the said land be reserved for the use of a poor-house for the county of Erie, to be selected by three persons appointed by the commissioners of Erie county for that purpose."  They followed this by the report of the viewers appointed by the commissioners, dated May 10th 1833, by which it appeared that they had selected one hundred acres in the south-west portion of the said third section of the town of Erie.  They then gave in evidence an Act of Assembly, passed May 2d 1864, Pamph. L. 680, entitled " An Act to grant to the county of Erie the interest of the Commonwealth in a strip of land on the west side of the tract formerly granted to said county, for the use of the poor of said county."  After reciting the provisions of the Act of April 8th 1833, it goes on to state in the preamble " that the persons appointed selected the one hundred acres out of the south-west portion of the said third section ; but in locating the same left a strip of land one hundred and thirty-one perches and six-tenths of a perch in length by sixty feet in width, between the west line of the land selected and the west line of the said third section."  It proceeds to grant to the county of Erie " all the title and interest of the Commonwealth to the said strip of land as before described," to form a part of the poor-house tract of said county : Provided, that nothing contained in this act shall be held to interfere with vested rights."  The plaintiffs then proceeded to give evidence by the testimony of surveyors and others, that the west line of the third section protracted in a straight line northward, would take in the

quantity of land described in the writ in the possession of the defendant.

Upon the face of this title thus presented, it is almost too plain for argument that the plaintiffs had made out no case. The Act of 1833 had granted to the borough of Erie the entire third section, except the one hundred acres selected by the viewers appointed by the commissioners of the county, and if, as the preamble to the Act of 1864 recites, the viewers left the strip of land in controversy between the west line of the land selected and the west line of the said third section, the Commonwealth had no title or interest which the legislature could grant to the plaintiffs without the consent of the borough of Erie. It would have been so even without the saving clause in the Act of 1864, that nothing therein should be held to interfere with vested rights. There was a perfect outstanding title in the borough of Erie, which was a complete bar to the plaintiffs' recovery upon their own showing. There was error, therefore, in the refusal of the court to affirm the defendant's 1st point, and in saying in reply to it that the Act of April 8th 1833 did not give the land in dispute to the borough of Erie.

But the learned judge below adopted a different view of the case. In his own language in his answer to the defendant's 3d point, he regarded " the special legislation on both sides respecting this land as having originated in mistake of the facts, and therefore valueless in settling the question of title." He dismissed therefore from consideration the grant contained in the Act of 1864 as inoperative, and, as we have seen, he was clearly right in so doing. The mistake, according to his opinion, was in supposing that there was any strip of land left by the viewers between the west line of the one hundred acres and the west line of the section. He states in his general charge that the viewers " selected one hundred acres in the south-west corner of said third section of the town of Erie as originally located. So their report and draft, filed and approved, distinctly state, and so all the world have understood it from that day to this, and subsequent maps and diagrams are made up on this basis." We have not been furnished on our paper-books with the report and draft of the viewers, nor with the subsequent maps and diagrams to which the learned judge refers. But as no exception was taken, and no error has been assigned to this part of the charge, we will assume all this to be correct in point of fact, and sustained by the evidence in the cause. It makes the plaintiffs' case no better. If this was as stated by the learned judge, then the west line of the poor-house tract and the west line of the third section were the same line—identical—and there was no strip of land between them. How, then, could the plaintiffs have a verdict for the land described in their writ, between the two lines and in the third

section ? There was no such land in existence, and at least without an amendment of the description in the writ, there could be no recovery. How could the sheriff deliver possession of lands between the west line of the poor-house tract and the west line of the third section, if those two lines were one and the same? The verdict and judgment, unless qualified, follow the description in the writ.

The learned judged considered, and if the facts upon which he relies were in evidence as he states them, he was undoubtedly right, that if the land in dispute is in section three, it belongs to the poor-house tract. The plaintiffs were entitled to recover on their title to the poor-house tract. That they had such title as trustees "for the use of a poor-house for the county of Erie," we think very clear. The reservation in the Act of 1833 was by necessary implication, if not by express words, a grant of the 100 acres to the county of Erie for the use expressed. Who was to erect the poor-house, and manage and control it when erected? Surely the county through its commissioners. The title to the Act of 1864 so states it and properly states it—"the tract formerly granted to said county for the use of the poor of said county." The learned judge permitted the plaintiffs to recover on this title doubtless as trustees of the charity. Yet he considered that the defendant was not entitled to avail himself of the bar of the Statute of Limitations, because, as he instructed the jury, "it belonged to the Commonwealth, and against her no length of possession would give title." We think that the learned judge fell into manifest error in refusing to affirm the defendant's 2d point as to the Statute of Limitations, and by saying that there was no sufficient evidence given in the case to raise the question there propounded. The title of the Commonwealth to the poor-house tract was divested by the Act of 1833 and vested in the plaintiffs. As against them, the running of the statute commenced on the day of the passage of that act, if the defendant was then in peaceable and adverse possession of the land in controversy, and so continued until the commencement of the action. This was a period of more than thirty-one years. That the Statute of Limitations runs against a county or other municipal corporation, we think cannot be doubted. The prerogative is that of the sovereign alone: *Nullum tempus occurrit reipublicæ.* Her grantees, though artificial bodies created by her, are in the same category with natural persons: Glover *v.* Wilson, 6 Barr 290; City of Cincinnati *v.* Evans, 5 Ohio St. Rep. 594. That the defendant had adverse and peaceable possession, so as to constitute a bar if he could set it up against the plaintiffs, was an undisputed and indisputable fact in the cause. It was shown by the plaintiffs' own testimony. Thomas Willis, a witness produced by them, testified: "Brown (under whom defendant claimed) had a field

[Evans *v.* Erie Co.]

cleared, and a fence on the west side of the poor tract as then understood" (in 1825). "There was the same fence then that is there now;" "same field occupied by Brown and Evans ever since; the fence has never been moved." There was no other evidence upon the subject in the case, as far as appears upon the paper-books. Upon this showing by the plaintiffs themselves the defendant below was entitled to a positive instruction from the court to the jury in his favor.

We do not deem it necessary to consider particularly the remaining assignments of error. That the jury were misled by the charge of the court we think already sufficiently shown. The question of the *statutory* presumption that the title was out of the Commonwealth did not arise. As we have seen, her title was divested by an actual grant. Although the description in the writ was undoubtedly rather loose, yet a protraction of the line marked on the ground south of the land in controversy in a straight direction to the north-west corner of section third, would have enabled the sheriff to give possession of all the land lying eastward of it to the plaintiffs.

Judgment reversed.