Torch et ux., Appellants, *v.* Constantino et ux.

428

Argued September 18, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

Before ROBINSON, P. J., without a jury.

*Robert Casey,* with him *Frank J. DeSanto,* for appellants.

*Robert W. Munley,* with him *Edward Delaney,* for appellees.

OPINION BY WATKINS, P. J., April 3, 1974:

This is an appeal from the judgment of the Court of Common Pleas of Lackawanna County, Civil Division, in an ejectment action, entered after a trial without a jury and a decision in favor of the defendant-appellees, Jack Constantino and Genevieve Constantino, his wife, and against the plaintiff-appellant, Joseph Torch and Rosella Torch, his wife, sustaining a claim of title by adverse possession; and from the dismissal of exceptions filed by the appellants to this finding. The dis-

pute involves 0.65 acres of land in Lackawanna County. Appellees claim the parcel of land by virtue of adverse possession. It is admitted by the appellants that adverse possession was established for more than 21 years.

The appellants claim title to the land by virtue of a tax deed granted to them by Lackawanna County after a treasurer's tax sale. Both parties have recorded their respective titles. Appellees recorded their claim of title by adverse possession on December 21, 1970. The appellants recorded a quit claim deed from the county on August 31, 1971. The deed had been delivered on September 27, 1966.

Included in the period making up the prescribed period is the time period during which the land in question had been returned to the county for nonpayment of taxes. The appellants contend that the prescription period does not run against property owned by the county after return for nonpayment of taxes and removal from the assessment list.

There is no question that adverse possession will not lie against lands held by the Federal Government. *U.S. v. Oglesby*, 163 F. Supp. 203 (W.D. Ark. 1958). Nor can a claim of adverse possession be asserted against the Commonwealth. *Hostetter v. Commonwealth*, 367 Pa. 603, 80 A. 2d 719 (1951). As to political subdivisions, such as counties, townships and boroughs the rule seems to be that title by prescription by such governing bodies, and in this case, may be asserted unless the land in question is devoted to public use. *City of Philadelphia v. Philadelphia & R.R. Co.*, 58 Pa. 253 (1868). *Guerra v. Galatic*, 185 Pa. Superior Ct. 385, 137 A. 2d 866 (1958). This rule is far from unanimous throughout the country. However, Pennsylvania does recognize that local governments have immunity from a claim of adverse possession when the land in question is devoted to public use.

Thus, the question before us is whether land held for tax sale after return for nonpayment of taxes tolls the prescription period. The court below in an able opinion held that the statutory period is not tolled but continued to run against land held by the county. The court said: "Since the county held title to the land involved by virtue of County Treasurer's deeds when the defendants took possession in 1944 until the conveyance to the plaintiffs August 31, 1966, the pivotal question here is whether the statute of limitations governing actions for the recovery of land runs against a county."

The court below relied heavily on two cases: (1) *Goldman v. Quadrato,* 142 Conn. 398, 114 A. 2d 687, 55 A.L.R. 2d 549 (1955); and (2) *Evans v. Erie County,* 66 Pa. 222 (1870). In the *Goldman* case, supra, decided by the Supreme Court of Connecticut in 1955, the Court said: "Title to realty held in fee by a state or any of its subdivisions for a public use cannot be acquired by adverse possession" (citing cases). "Adverse possession will run against a municipality, however, as to land which is not held for a public use" (citing cases). The court then said: "After title to lot 3 passed to the City of Waterbury by virtue of a judgment foreclosing a tax lien, the lot was permitted to be idle. It was neither used for nor dedicated to any public purpose. . . . Nor is there any decisive significance to the fact that the lot was acquired by the city in performing its governmental duty of collecting taxes. The controlling factor is the use to which the realty was put after its acquisition. We do not accept the reasoning of courts of other jurisdictions which appear to take a contrary view."

The other case, *Evans v. Erie County,* supra, emphasized by the court below, as establishing the law in Pennsylvania, was decided in 1870, and Mr. Justice SHARSWOOD said at page 228: "That the Statute of Limitations runs against a county or other municipal cor-

poration, we think cannot be doubted. The prerogative is that of the sovereign alone: Nullum tempus occurrit reipublicae. Her grantees, through artificial bodies created by her, are in the same category with natural persons; . . . That the defendants had adverse and peaceable possession, so as to constitute a bar if he could set it up against the plaintiffs was an undisputed and undisputable fact in this case."

The question now before us is whether the passage of time and the entry of government into so many fields not considered public domain in the past calls for a re-examination of whether the duty of collection of taxes placed by legislative mandate on local governments, imposing as it does a trusteeship for all tax bodies involved, is not in fact a governmental function.

The recent case of *Johnson v. Pennsylvania Housing Finance Agency*, 453 Pa. 329, 309 A. 2d 528 (1973), points out the logic of this reasoning. This case challenges the constitutionality of the Housing Finance Agency Law and raised the question of what constitutes "public use". It was held to be constitutional and Mr. Justice ROBERTS, speaking for the Court, made several comments that bear weight as we consider the present problem of this appeal. He said at page 533: "In determining the merits of plaintiff-appellee's contention, we are guided by the salutary rule that the legislative declaration, although not conclusive '. . . is entitled to not only respect but to a prima facie acceptance of its correctness: Dornan, supra, 331 Pa. at 222, 200 A. at 841. Moreover, we note that '. . . views as to what constitutes a public use necessarily vary with changing conceptions of the scope and functions of government, so that to-day there are familiar examples of such use which formerly would not have been so considered. As governmental activities increase with the growing complexity and integration of society, the concept of "public use" naturally expands in proportion.' "

Flowing through the numerous acts of assembly dealing with the problem of nonpayment of real estate taxes is the clear intent of the legislature amounting to a public policy to make tax sales and tax titles more attractive to prospective purchasers so that land owned by local government by virtue of nonpayment of taxes can be more promptly sold and the land restored to the assessment lists. The big problem in the past that the legislature has strived to change is the many impediments placed on tax titles that drive purchasers away from tax sales. The holding that title to property held by the county for nonpayment of taxes can be obtained by adverse possession is another such impediment deterring prospective purchasers.

I am concerned with the situation where land is returned to local government for nonpayment of taxes and for the legislative purpose of collecting taxes lying fallow and despite numerous tax sales remain the property of the county without contributing to the cost of local government. It is possible to conceive of a situation where land may be held by the county for the full period of prescription and a smart manipulator claiming title by adverse possession obtains title without consideration and without the payment of any taxes. As pointed out in *Thompson v. Frazier,* 159 Pa. Superior Ct. 395, 48 A. 2d 6 (1946), this Court said at pages 401-402: "The tendency of modern legislation is to strengthen tax titles. 5 Thompson on Real Property (Perm. Ed.) §§2925, 2926. Because they were subject to attack for technical, even trifling, irregularities, they were snares and delusions, and people have been unwilling to invest in them. As a consequence, the coffers of our political subdivisions are cumbered with properties acquired at tax sales for which there is no ready market, and yet, because taxes upon them remain unpaid and accumulate from year to year, the subdivision is deprived of needful current revenue. The statute is

an attempt to correct this condition by making tax titles more attractive and therefore more readily marketable, and it must be presumed that in its enactment the legislature intended 'to favor the public interest as against any private interest': Statutory Construction Act of May 28, 1937."

The legislature has struggled with this problem over the years. See, 72 P.S. §5860.101 et seq. The intent is clear to impose on counties a governmental function of collecting delinquent taxes as a trustee for the taxing districts so that real estate does not lie fallow and that tax titles are so improved as to attract buyers and restore real estate to the tax lists. The time has come for the courts to recognize and respect the intention of the legislature in this field and to realize that "changing conceptions of the scope and functions of government", clearly call for a determination that adverse possession does not run against the political subdivisions holding land for tax sales for nonpayment of taxes, as trustee, and to hold that this function is a governmental one.

Judgment reversed with a procedendo.