Herbert KEMPNER and Carol
Kempner, Plaintiffs,

v.

AETNA HOSE, HOOK & LADDER COM-
PANY, Newark, Delaware, a Delaware
Corporation, Defendant.

Court of Chancery of Delaware,
New Castle County.

Submitted Aug. 4, 1978.
Decided Oct. 30, 1978.

David Snellenburg, II, Wilmington, for
plaintiffs.

Richard S. McCann, Newark, for defend-
ant.

HARTNETT, Vice Chancellor.

The issue presented in this matter is
whether title to real estate may be acquired
as the result of the adverse possession of
real property owned by a municipality and
used for public purposes.

Plaintiffs (Kempners) seek to require de-
fendant (Aetna) to remove a fence which it
has erected which partially blocks the

Kempners' access to their lands. The Kempners' claim is based on an alleged easement acquired by adverse possession. Aetna moved for summary judgment on the grounds that an easement acquired by prescription may not be asserted against a municipality.

The material facts are not in dispute. Kempners acquired, by deed, the property known as Nos. 22 and 24 Academy Street, Newark, Delaware, in 1972. Kempners' property is adjacent to the property of Aetna which was acquired by deed from the City of Newark in 1976. There is no dispute as to the record title of the parties' respective lands. Aetna's predecessor in title, the City of Newark, had record title to Aetna's parcel since 1896.

From the time of its acquisition in 1896, Aetna's premises had been used continuously, until 1973, by the City of Newark for various municipal functions. Initially, Aetna, which is a voluntary fire company, occupied the building on the premises. Near the turn of the century, the City Clerk occupied the second story. Around 1924, Aetna moved across the street and the building was occupied by the Newark City Administrative Offices. Eventually, the Newark Police Department and the Alderman's Court maintained offices in the building. In 1968, the Police Department moved to new quarters and the premises housed the Alderman's Court. The interior of the building was destroyed by fire in 1973. In 1976 it was acquired by Aetna by deed from the City but subject to an express agreement that the building on the premises be restored to its pre-1900 condition and be used to house fire-fighting equipment and an ambulance. In addition, it was also agreed that Aetna would establish a public park in the area north of the building (between the building and Kempners' lands). The area to be turned into a park had previously been occupied by a portion of the existing building and by a parking area for the various municipal vehicles which were utilized at the buildings.

In 1976, Aetna erected a fence on its premises and along the boundary of its property and that of Kempners. The fence separates the proposed park area from a walkway on Kempners' property leading to a building of the Kempners. Kempners contend that the fence makes entry and exit to the back of their building impossible for sanitary workers and firemen, and that the fence prevents the tenants who occupy the upper floors of their building from carrying furniture in and out.

The City of Newark was initially incorporated as a municipality by the General Assembly in 1851 (10 *Del.L.* 527) and re-incorporated pursuant to the provisions of 22 *Del.C.*, Ch. 8 (Home Rule), on May 29, 1965.

The Kempners claim that they have gained an absolute right to use the alleyway by adverse user for over 20 years. Aetna argues that Delaware law precludes a party from asserting a claim of title acquired by adverse user as to lands held by the State or its political subdivisions for a public purpose. Kempners respond that a city or a town is a municipal corporation and not a political subdivision of the State and that lands held by a city or town may, therefore, be subject to adverse user claims.

The general rule of law is that acts of limitation do not run against the state, unless a statute provides otherwise. *Mayor and Council of Wilmington v. Dukes*, Del.Supr., 157 A.2d 789 (1960). The Delaware twenty year period (10 *Del.C.* § 7902 [1]) for obtaining prescriptive or adverse rights is a limitation which is recognized to fall within this rule and it is settled in Delaware that adverse possession may be asserted against this State only when permitted by a statute. *Walls, Lessee v. M'Gee*, Del.Supr., 4 Harr. 108 (1843); *Com-*

---

1. 10 *Del.C.* § 7902 states:

No person shall have, or maintain any writ of right, or action, real, personal, or mixed for or make any prescription, or claim, to, or in, any lands, tenements, or hereditaments, of the seisin, or possession of him, his ancestor, or predecessor, and declare, or allege, in any manner whatever, any further seisin of him, his ancestor, or predecessor, but only an actual seisin of him, his ancestor, or predecessor, of the premises sued for, or claimed, within 20 years next before such writ, or action.

missioners of Lewes v. Blankenburg, Del. Ch., 39 Del.Ch. 178, 161 A.2d 424 (1960); State Board of Trustees of Del. State Hosp. v. Boyer, Del.Super., 159 A.2d 793 (1960) and Miller v. Town of Seaford, Del.Ch., 194 A. 37 (1937).[2] Walls, Lessee v. M'Gee, supra, states the following on page 110:

> That as a general principal, acts of limitation will not run against the State; nor can there be adverse possession, strictly speaking, against the State such as can be against an individual.

■ The only issue before me, therefore, is: "Whether real property held by a municipal corporation for public use is to be treated like property owned by the State and not therefore be subject to a claim of adverse possession?"

It seems clear that the land in question has been used for public purposes since the turn of the century. The distinction between the two types of functions that a municipality can make of its land: one of "governmental" or one of a "corporate nature", was made in the case of Register v. H. Burton Elliott, Inc., Del.Super., 229 A.2d 488 (1967), at page 489:

> "The underlying test in distinguishing governmental functions from corporate functions . . . is whether the act performed is for the special benefit of the corporate entity or for the common good of all; that is, for the public."

The uncontested facts show that the premises were used to house the City Administrative Offices, the City Police Department, the Fire Department, the Alderman's Court, and most recently, a public park and ambulance station. In San Francisco v. Bradbury, Cal.Supr., 28 P. 803 (1891), a fire engine parking lot was determined to be a "public use" that would prevent adverse possession from running against a city.

The Kempners' argument that the City of Newark, being a municipal corporation, is not a political subdivision of the State which can resist claims of adverse posses-

sion is refuted because "Municipal corporations are bodies politic and corporate, created not only as local units of local self-government, but as governmental agencies of the state." 56 Am.Jur.2d Municipal Corporations, Etc., § 23, p. 87, citing Carolina-Virginia Coast, H. v. Coastal Turnpike Auth., N.C.Supr., 237 N.C. 52, 74 S.E.2d 310 (1953) and Town of Othello v. Harder, Wash.Supr., 46 Wash.2d 747, 284 P.2d 1099 (1955).

There seems to be no reported decisions in Delaware directly answering the question of whether or not lands held by an incorporated municipality for public use can be the subject of adverse possession. There was a time when this area of law was unclear, but this is no longer so. One noted author has stated:

> Prescriptive rights may not be acquired ordinarily in the property of a municipal corporation devoted to public use, for the reason (among others) that such rights are based upon the presumption of a lost grant, and as public property is generally speaking inalienable, no grant thereof may be presumed. Prescriptive rights in municipal property have most frequently been asserted with referenced to streets and alleyways, as to which, in accordance with the rule as stated, such rights have been deemed not to exist.[3]

This is the majority rule in this country. Torch v. Constantino, Pa. Super., 227 Pa.Super. 427, 323 A.2d 278, 279 (1974); Siejack v. City of Baltimore, Ct.App.Md., 270 Md. 640, 313 A.2d 843 (1974), at page 846: "Quite likely nothing is more solidly established than the rule that title to property held by a municipal corporation in its governmental capacity, for a public use, cannot be acquired by adverse possession"; Goldman v. Quadrato, Supreme Ct. of Errors, Conn., 142 Conn. 398, 114 A.2d 687 (1955), at page 690: "Title to realty held in fee by a state or any of its subdivisions for a public

---

2. A former statute (7 Del.C. § 4502), which permitted a claim of adverse possession to be asserted against the State was repealed in 1953 by 49 Del.L., Ch. 386.

3. 10 McQuillen, Corporate Property, § 28.55, p. 196, Adverse Possession and Prescription, 3rd edition, revised 1966.

use cannot be acquired by adverse possession." See also 3 Am.Jur.2d, *Adverse Possession*, § 206 and 55 A.L.R.2d 612, § 34 *Property Held For Public Use; General Rule of Nonacquisition.*

This majority rule was summarized by the Supreme Court of California in 1891:

> In our opinion there is no reason for not applying the same rule to property which is dedicated or reserved to a public use, when the title is held by the municipality, as is applicable when it is held by the state. The same principles which prevent an adverse possession from ripening into a title when the title to the property belongs to the public, and is held for public use, apply in the one case as in the other. It is immaterial where the title, that is, the record title, is held, whether by the state at large, or by a county, or by some municipal department or other official body. There can be no adverse holding of such land which will deprive the public of the right thereto, or give title to the adverse claimant, or create a title by virtue of the statute of limitations. This rule is universal in its application to all property set apart or reserved for public use, and the public use for which it is appropriated is immaterial. The same principles which govern in the adverse holding of a street, a public square, a quay, a wharf, a common, apply to the adverse holding of a court-house, a jail, or school-house. The public is not to lose its right through the negligence of its agents, nor because it has not chosen to resist an encroachment by one of its own number, whose duty it was, as much as that of every other citizen, to protect the state in its rights." *San Francisco Board of Education v. Martin*, 28 P. 799, 802 (1891).

There are a few states that still adhere to a contrary minority view but the clear trend is toward the majority rule.[4]

 Kempners also argue that the fact that the City of Newark was reincorporated under the Home Rule Provision of the Delaware Code (22 *Del.C.*, Ch. 8) in 1965 somehow negates the majority rule of law. Even if we assume, arguendo, that the grant of "home rule" to Newark changes the rule that adverse possession does not run against an incorporated municipality (an assumption not supported by any case cited by plaintiffs), twenty years has not elapsed since 1965.

Since Kempners' claim is totally predicated on its claim of adverse user, Aetna's Motion For Summary Judgment is granted. Aetna should submit a proposed order.

---

4. See 11 McQuillen, Municipal Corporations, § 30.179, p. 78, *Adverse Possession—Against Municipality*, 3rd edition, revised 1977.