2017 PA Super 49

| | | |
|---|---|---|
| RODGER WEIBLE | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | | |
| v. | | |
| WILLIAM P. WELLS AND ELIZABETH LOUISE WELLS | | |
| Appellants | | No. 46 WDA 2016 |

Appeal from the Order December 8, 2015
In the Court of Common Pleas of Jefferson County
Civil Division at No(s): 923-2009 CD

BEFORE: LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

OPINION BY LAZARUS, J.: **FILED FEBRUARY 27, 2017**

William P. Wells and Elizabeth Louise Wells (the Wellses) appeal from the trial court's order ejecting them from the subject property, a portion of Appellant Rodger Weible's property, and ordering them to pay to resurvey the line between the parties' properties. The trial court concluded that the Wellses did not adversely possess the subject property because they only demonstrated the required elements of adverse possession for 20 years before local counties, predecessors in title to Weible, became the owners of and publicly used the property. After careful review, we reverse and remand.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Weible and the Wellses own neighboring residential property located, respectively, at 703 East Main Street and 717 East Main Street in Reynoldsville, Pennsylvania. The Wellses obtained title to their parcel by deed dated August 2, 1965, from Ralph August. Weible purchased his parcel from Jefferson and Clearfield Counties (the Counties) on December 22, 1998. The Wellses installed landscaping and a driveway upon a portion of 703 East Main Street in August 1975 and October 1979 (collectively, subject property). The Counties jointly operated a facility that housed and provided services to mental health patients on the subject property from May 1995 through December 1998.

In 2008 a tree fell from the Wellses' property and caused damage to surrounding power lines and power sources. When the Wellses offered to pay the borough to repair the lines, they were notified that the fallen tree had come from Weible's property and that they were not responsible for the cost of repairs. After the borough attempted to collect payment from Weible for the damage, Weible paid Alexander & Associates, Inc., to survey his property to determine the boundary line between 703 and 717 East Main Street. Weible discovered that the Wellses' landscaping and driveway were encroaching on his property; he requested that they remove the landscaping.

On August 28, 2009, Weible filed the current action in ejectment against the Wellses alleging that since August 2, 1965, the Wellses caused landscaping and a driveway to be installed on his property. The Wellses

- 2 -

filed an answer, new matter and counterclaim to quiet title to the subject property and also raised the affirmative defense of adverse possession.

On September 11, 2015, the court held a non-jury trial.[1] The trial court found, as a fact, that the Wellses have "open[ly] notoriously, visibly and adversely" used the subject property "for a period well in excess of 21 years" and that the subject property "has been in virtually the same position and condition since the date of [its] initial placement which is well in excess of 21 years." Trial Court's Findings of Fact, 12/8/15, at ¶ 16. The court ultimately determined that "because Weible received his property from a political subdivision, [the] Well[ses'] adverse possession claim cannot stand *until 21 years after* the date of conveyance from these political subdivisions." *Id.* at ¶ 22 (emphasis added). The court reasoned that because the Wellses were not "capable of adverse possession against those counties' ownership, the 21[-]year period would start anew after the counties sold the property." *Id.* at ¶ 23. Because the Wellses only possessed the subject property for eleven years after the Counties sold it to Weible, the court found that they did not adversely possess it for the requisite 21 years.

---

[1] We note that "the factual findings of a trial court sitting without a jury carry the same weight as a jury verdict, and we will not disturb those findings on appeal absent an error of law or abuse of discretion." *Arcadia Co., Inc. v. Peles*, 576 A.2d 1114, 1116 (Pa. Super. 1990) (citing *Pato v. Cernuska*, 493 A.2d 758, 759 (Pa. Super. 1985)).

On December 8, 2015, the court entered an order ejecting the Wellses from the property, requiring them to pay the costs of resurveying the line between their property and Weible's property, and giving them until April 30, 2016, to remove any of their items from Weible's property. The Wellses filed a timely motion for reconsideration, which the trial court properly treated as a post-trial motion. The court denied the motion and this timely appeal follows. On appeal, the Wellses raise the following issues for our consideration:

(1) Whether the lower court committed clear error in granting [Weible's] Complaint in Ejectment and dismissing [the Wellses'] counterclaim for quiet title of the disputed real property, because [the Wellses] established during trial that they continuously and exclusively mowed and adversely cared for and possessed the real property at dispute from August 1965 through the time of trial.[2]

_____

[2] There is a dispute regarding whether the Wellses maintained the subject area prior to installing the landscaping and driveway consistently since they owned the land in 1965 (while possessed by Ralph August and his family). If this were the case, 21 years would have passed prior to the Counties owning the subject property. Although Ralph August testified that they all took turns mowing the grass right to the edge of the Wellses' property line, because a split-rail fence was installed after the Augusts moved from the subject property, the evidence of the Wellses' maintenance of the area was not conclusive. **See** N.T. Non-Jury Trial, 9/11/15, at 156-57 ("[W]e always mowed that edge to their property."). Therefore, we find that the time the clock started running for purposes of adverse possession was the date that the landscaping (1975) and driveway (1979) were installed. Thus, finding that the Wellses established that they adversely possessed the land from the latter dates, **see infra** pp. 5-10, this issue is moot.

(2)     Whether, based upon the pleadings, as well as the evidence presented in the instant matter, the lower court committed clear error in finding that [the Wellses] failed to satisfy the elements of adverse possession during their open, exclusive, continuous, and adverse possession of the real property in dispute from August 1965 through the time of trial.

(3)     Whether the lower court committed clear error in determining that the 21-year statutorily prescribed period for [the Wellses] to obtain the real property in dispute by virtue of adverse possession started anew or reset – as opposed to being tolled or paused – during the time that Clearfield and Jefferson Counties purportedly owned said real property.

(4)     Whether the lower court committed clear error in determining that the disputed real property was devoted to public use by Clearfield County and Jefferson County from May 1995 through December 1998.

(5)     Whether the lower court committed clear error in ruling that political subdivisions of this Commonwealth are immune from a claim of adverse possession, when, as in the present matter, Clearfield and Jefferson Counties owned a residential property, of which county officials and personnel visited and observed on a regular, daily basis from May 1995 through December 1998.

(6)     Whether the lower court committed clear error in finding that [the Wellses] did not contest the survey map prepared by [Weible's] surveyor, Alexander and Associates, and ordering that [the Wellses] are required to retain and pay Alexander and Associates to resurvey the line between [the parties' properties] to determine the proper location of said boundary.

Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law; it is dependent upon possession for a set period of time and authorized by statute. *See* 68 P.S. §§ 81-88 (claim by adverse possession). One who claims title by adverse possession must prove actual, continuous, exclusive, visible,

notorious, distinct and hostile possession of the land for twenty-one years.[3] *Flannery v. Stump*, 786 A.2d 255, 258 (Pa. Super. 2001) (citations omitted).  Each of these elements must exist; otherwise, the possession will not confer title.  *Id.* Moreover, until the full expiration of the statutory period, "a property owner's record title remains unaffected and untrammeled."  *Hershey v. Poorbaugh*, 21 A.3d 434, 488 (Pa. Super. 1941).

Counties' Possession (1995-1998)

The trial court relies upon the common law doctrine, *nullum tempus occurrit regi*, which translated means "time does not run against the king" to come to its decision that the Wellses cannot be successful in their claim of adverse possession against the Counties.  Specifically, the court determined that "the law, as it has long stood and currently stands, does not allow this Court to rule against the political subdivision even when it owns a residential neighborhood, and as such, judgment must be for the plaintiff."  Trial Court's Discussion, 12/8/15, at 6.  While the court was correct that one cannot adversely possess land against a political subdivision like the

---

[3] Typically, if a party's use of the property is adverse from its inception, one of the true title-holders, in order to interrupt the adverse possessor's continuous adverse use and toll the running of the statute of limitations against that true owner, must: a) bring and pursue to judgment legal proceedings in which the use is determined to be without legal justification; or b) cause a cessation of the use without the aid of legal proceedings. *Reed v. Wolyniec*, 471 A.2d 80, 85 (Pa. Super. 1983).

Counties, it does not necessarily prevent that person from adversely possessing the land against the individual that purchases the property from the political subdivision, its successor. Rather, during the time that the political subdivision owns the property the 21-year statutory period for adverse possession is tolled or stops running.

In *Torch v. Constantino*, 323 A.2d 278 (Pa. Super. 1974), a panel of this Court addressed the issue of "whether land held for tax sale after return for nonpayment of taxes **tolls** the prescription period" for adverse possession. *Id.* at 279 (emphasis added). There, our Court held that "adverse possession does not run against the political subdivisions holding land for tax sales for nonpayment of taxes, as trustee, and . . . this function is a governmental one." *Id.* at 281. Specifically, the court acknowledged that local governments have immunity from a claim of adverse possession when the land in question is devoted to public use. *Id. See Lysicki v. Montour School Dist.*, 701 A.2d 630 (Pa. Cmwlth. 1997) (as to political subdivisions, such as counties, townships and boroughs, rule seems to be that title by presumption against such governing bodies may be asserted unless land in question is devoted to public use); *see also Fred E. Young, Inc. v. Brush Mt. Sportsmen's Ass'n*, 697 A.2d 984, 992 (Pa. Super. 1997) ("Adverse possession does not lie against land held by the county in connection with a tax sale."); 68 P.S. § 88 ("Nothing contained in this act [claim by adverse possession] shall be construed to give any title to any lands by a claim of title adverse to that of the Commonwealth of

Pennsylvania, and no claim of title adverse to the Commonwealth of Pennsylvania shall be made or recorded under the provisions of this act.").

Instantly, the trial court concluded that the subject property was publicly used by the Counties from 1995 to 1998. Specifically, the court noted that:

> [O]ur government and governmental agencies are tasked with the care and housing of mentally challenged individuals, and in fulfilling that duty they often acquire property and operate facilities through which they can provide valuable services persons satisfying their criteria. It is true, of course, that a relatively limited segment of the population directly takes advantage of these services. It is also true, however, that they are available to many others who choose not to utilize them.
>
> It would be shortsighted to conclude that only persons who are mentally ill or handicapped benefit from the services afforded them, though, because in offering those services, the government and its agencies also attempt to alleviate the familial, and societal burdens often associated with mental illness and retardation. In short, Jefferson and Clearfield Counties were operating 703 East Main Street for everyone's benefit. Whether or not every person in Jefferson and Clearfield County could actually go and receive the public services offered at and from that location, therefore, the counties clearly made public use of the property.

Trial Court Opinion, 12/22/15, at 1-2. We agree that the Counties publicly used the subject property, upon which they housed and provided services to a special subset of the local population, namely those with mental disabilities. *See Dornan v. Philadelphia Hous. Auth.*, 200 A. 834 (Pa. 1938) (because low-income housing on subject parcel would not be occupied by all, but only few of public, does not change fact that property's use constituted public use).

Therefore, accepting the trial court's conclusion that the subject parcel was publicly used, we must determine whether the three-year period in which the Counties owned the parcel merely tolled or completely reset the Wellses' 21-year statutory clock upon the Counties' sale of the land to Weible. We find that the statutory period was tolled and not completely reset.

While it is well established that the Wellses could not have legally obtained title to the land by adverse possession against the Counties while the Counties were the legal title owners of the subject property, it does not necessarily prevent the Wellses from asserting a claim of adverse possession against the Counties' successor in title, Weible. The trial court maintained that while the Counties owned the parcel from 1995-1998, the Wellses were unable to adversely possess the land. This is a distinction *with* a difference. Whether one can assert a claim of adverse possession against a landowner is distinguishable from whether that party can adversely possess land while it is owned by that same landowner. As **Torch** clearly stated, local governments have *immunity* from a claim of adverse possession when the land in question is devoted to public use. **Nelson v. Dibble**, 510 A.2d 792, 794 (Pa. Super. 1986). Moreover, not only can a claim not be brought against these entities, but the 21-year statute does not continue to run

during that time period. It is simply "tolled."[4] **See Torch**, 323 A.2d at 430 ("question before us is whether land held for tax sale . . . *tolls the prescription period*") (emphasis added); **see also Duffy v. Duffy**, 20 Pa. Super. 25, 28 (1902) (issue on appeal concerned whether recovery in ejectment action, without surrender, "*toll[s] the statute of limitations and interrupt[s] adverse possession*.") (emphasis added).

With regard to the trial court's claim that the Counties' public use of the property made it impossible for the Wellses to continuously possess the land, a required element of adverse possession, we note that our Supreme Court has described this element as when one "continue[s] a positive appearance of ownership, by treating the property as his own, and holding it within his exclusive control." **Stephens v. Leach**, 19 Pa. 262 (1852). **See also Reed v. Wolyniec**, 471 A.2d 80, 85 (Pa. Super. 1983) (in explaining continuity element of doctrine of adverse possession, our Supreme Court has noted that "[p]ossession of land is dominion over the land; it is not equivalent to occupancy"). Merely because the Counties owned the subject property does not automatically mean that the Wellses are unable to concurrently use the land in a way consistent with adverse possession. This is especially true where the record supports the trial court's finding of fact that "the [Wellses] continued their notorious and adverse possession of the

---

[4] Toll is defined, in part, as "to delay, suspend or hold off the effect of a statute." http://dictionary.law.com.

property claimed during the time period that Clearfield and Jefferson Counties owned the property for programs for mentally challenged individuals." Trial Court's Findings of Fact, 12/8/15, at ¶ 21. The court also noted that county officials and other individuals that visited the county property could see, just feet away, the landscaping that the Wellses put in and maintained as well as the driveway that was paved over the line. **See Brennan v. Manchester Crossings**, 708 A.2d 815 (Pa. Super. 2008) (to constitute distinct and exclusive possession for purposes of establishing title to real property by adverse possession, claimant's possession need not be absolutely exclusive; rather, it need only be type of possession which would characterize owner's use).

The record bears out the fact that the Wellses have "consistently and continuously maintained and notoriously used the property in plain view of their neighbors," **id.** at 6, from installation of the landscaping and driveway (1975/1979) through the present. We do not believe that the Counties' immunity from suit eviscerates the Wellses actual, continuous,[5] exclusive,

_____

[5] The dissent relies upon **Showalter v. Pantaleo**, 9 A.3d 233 (Pa. Super. 2010), to conclude that the Wellses' possession was not continuous and that the 21-year period for purposes of adverse possession should run _anew_ after the local counties sold the land to Weible. We disagree. In **Showalter**, a case involving land that became part of a bankruptcy estate, our Court relied upon an Illinois decision that found that the mere act of a title holder petitioning for reorganization under the federal bankruptcy act was considered "an act of dominion over the property." **General Iron Industries, Inc. v. A. Finkl and Sons Co.**, 686 N.E.2d 1, 5 (Illinois 1997). Instantly, Pennsylvania law clearly states that land held by a governmental
_(Footnote Continued Next Page)_

visible, notorious, distinct and hostile possession of the subject property. Stated another way, the Counties' ownership of the tract does not "start anew" the 21-year clock upon their sale of the land to Weible. It merely tolled the statutory period for the Wellses. Title from adverse possession comes from occupying the land in a manner consistent with ownership. Here, the Wellses proved that they adversely possessed the subject property for the requisite 21 years. Accordingly, we reverse the trial court's order granting Weible title to the subject property and mandating that the Wellses pay for resurveying, and remand the case for the entry of an order vesting ownership of the property to the Wellses by adverse possession.[6]

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

or political subdivision "**tolls** the prescription period." ***Torch v. Constantino***, 323 A.2d 278 (Pa. Super. 1974). Under such circumstances, the statute is merely stalled or held in abeyance until the subdivision sells the land. In the instant case, no overt act of "dominion" was ever exercised by the counties like that in ***General Iron***. In fact, the court found that the Wellses have "consistently and continuously maintained and notoriously used the property in plain view of their neighbors." ***See supra*** p. 11. Accordingly, we believe that the statutory period did not run anew once Weible became the title holder to the subject property, but, rather, the years that the counties owned the property are excluded from the running of the 21-year clock. ***See Bezjak v. Diamond***, 135 A.3d 623, 629 (Pa. Super. 2016) (citing principles announced in ***Showalter*** and concluding that "by **excluding** the time [when property was part of bankruptcy estate]," adverse possessor claimants could not "establish the requisite twenty-one years of continuous possession for adverse possession.").

[6] We also recognize that an adverse possessor may accumulate the requisite statutory 21 years as against multiple title owners of the disputed land. ***See Brennan***, ***supra*** (adverse possession proven by appellants where multiple persons were successive title owners of subject property).

Order reversed.  Case remanded.  Jurisdiction relinquished.[7]

Judge Solano joins this Opinion.

Judge Strassburger files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/27/2017

---

[7] Having disposed of the appeal on the bases of issues 2 and 3, we need not address the Wellses' remaining issues.