# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

WILMA MISHOE and THE
APARTMENTS AT MISHOE COVE,
LLC,

           Petitioners,

    v.

CITY OF DOVER PLANNING
COMMISSION, CITY OF DOVER,
PATEL COLLEGE PROPERTIES,
LLC, PATEL EXCESS COLLEGE
ROAD, LLC, and
JEMM INVESTORS,

           Respondents.

C.A. No.: K23A-07-002 JJC

Submitted: December 19, 2024
Decided:   March 12, 2025

## MEMORANDUM OPINION & ORDER

John A. Sergovic, Esquire, and Tyler J. Friedman, Esquire, Sergovic Carmean Weidman McCartney Owens, Georgetown, Delaware, *Attorneys for the Petitioners.*

Glenn C. Mandalas, Esquire, Alex C. Burns, Esquire, and Luke W. Mette, Esquire, Brockstedt Mandalas Federico, LLC, Lewes, Delaware, *Attorneys for the Respondents City of Dover Planning Commission and City of Dover.*

Nicholas G. Kondraschow, Esquire, Rhodunda, Williams & Kondraschow, LLC, Wilmington, Delaware, *Attorney for the Respondent Patel College Properties, LLC, and Respondent Excess College Road, LLC.*

**CLARK, R.J.**

Petitioners Wilma Mishoe and the Apartments at Mishoe Cove, LLC (collectively the "Mishoes") filed a two-count amended petition that is the subject of a motion to dismiss. In their filing, the Mishoes seek (1) certiorari review of a land use decision, and (2) a declaratory judgment confirming their status as owners of a parcel of land.

In Count I, they challenge a site development plan (the "Plan") approved by the City of Dover Planning Commission (the "DPC"). There, the Mishoes contend that the DPC wrongly included their land in the Plan (the "Disputed Land"). More specifically, the Mishoes contend the DPC erred when it approved the Plan because (1) the Mishoes owned the Disputed Land, (2) the Disputed Land was never lawfully dedicated to the City of Dover, and (3) the City unlawfully annexed the parcel.

Patel College Properties, LLC, and Patel Excess College Road, LLC (collectively, the "Patels") successfully applied for the Plan from the DPC. The Mishoes, however, chose not to name the Patels as respondents in their original petition. Presently, they seek to remedy that defect with an amended petition that adds the Patels and the City of Dover as respondents.

The DPC and the City of Dover (collectively the "City Respondents"), and the Patels, now move to dismiss Count I. They contend that the Patels are indispensable parties whom the Mishoes cannot add to the suit because the applicable statute of repose has expired. Furthermore, the City Respondents seek dismissal of Count I in its entirety because the Mishoes cannot now add them as indispensable parties.[1]

_____

[1] The City of Dover is also arguably a necessary, and perhaps indispensable party, because the Mishoes contest the Disputed Land's dedication to the City. That allegedly lawful dedication, and the subsequent alleged annexation, provided the DPC justification to include the Disputed Land in the Plan for access purposes. For the balance of this Memorandum Opinion, the Court will focus only on the non-inclusion of the Patels because the parties focused primarily on them and their omission from the claim is ultimately dispositive. The Court offers no opinion on the necessity or

2

For the reasons below, the Mishoes failed to include indispensable parties within the time prescribed in the applicable statute of repose. Their claims also do not relate back to the date of the original filing. Thus, the Mishoes are unable to include the Patels as indispensable parties to Count I which must be dismissed with prejudice.

Turning to Count II, the Mishoes request a declaration that they own the Disputed Land by deed and record title. Alternatively, they claim ownership through adverse possession. The City Respondents and the Patels move to dismiss that count because (1) the Mishoes have interjected extrinsic evidence into the matter to support their claim, and (2) it is self-apparent under the circumstances that a court will need to consider extrinsic evidence to resolve the dispute. Those circumstances, they assert, convert Count II to a quiet title action. That, they claim, divests the Superior Court of subject matter jurisdiction.

For the reasons that follow, a court will need to consider extrinsic evidence beyond the deeds that the Mishoes offer to support their claim. As a result, resolution of the dispute is possible only through a quiet title action which falls outside the Superior Court's subject matter jurisdiction. Accordingly, Count II must be dismissed without prejudice for potential transfer to the Court of Chancery.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The Mishoes have filed three separate civil actions to challenge the DPC's approval of the Plan and the procedural history is extremely complex as a result. While the three actions challenge the same result, they attack that result from different angles in scattered fashion.

The motions to dismiss the Mishoes' first action, (hereinafter the "DPC Action") are the subject of this Opinion. In the DPC Action, the Mishoes seek (1)

_____

indispensability of the City of Dover as a party in Count I or whether the Mishoes' original inclusion of the DPC as a party satisfied any such concerns as far as the City is concerned.

3

certiorari review of the DPC's decision to approve the Plan, and (2) a declaratory judgment confirming their ownership of the Disputed Land.[2]

The Mishoes' second filed action challenged the City of Dover Board of Adjustment's refusal to hear an appeal below (hereinafter the "BOA Appeal"). Below, the Mishoes attempted to appeal the DPC's decision approving the Plan to the BOA. The BOA, however, refused to hear it.[3] In response, the Mishoes filed the BOA Appeal in this Court.[4]

The Mishoes' third action is styled as a suit under 42 U.S.C. § 1983 (hereinafter the "1983 Action").[5] In the 1983 Action, they sue several City of Dover officials and entities. The Mishoes contend that those persons and bodies acted in concert to deprive them of their constitutional rights when they approved the Plan over their objection.

---

[2] C.A. No. K23A-07-002 JJC.

[3] C.A. No. K23A-10-001 JJC. The Mishoes' primary claim in the BOA Appeal was an administrative appeal. Alternatively, they requested certiorari review.

[4] As background on the municipal entities involved, the Dover Planning Commission and the City of Dover Board of Adjustment each govern distinct areas of land use planning. The DPC is primarily tasked with approving or denying conditional land uses, site development plans, and other architectural or developmental applications. *See generally* DOVER, DEL., CODE OF ORDINANCES app'x. B, art. 10, §§ 1–4 (2011). When approving or denying any such use, application, or plan, the DPC "shall take into consideration the public health, safety and welfare, [and] the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular." *Id*. § 1. Separate and apart, the BOA primarily oversees the granting of variances—i.e., "a license or official authorization to depart from a zoning law." *See generally* DOVER, DEL., CODE OF ORDINANCES app'x. B, art. 9, §§ 1–3 (2010); VARIANCE, Black's Law Dictionary (12th ed. 2024). The BOA has the authority to grant "variances from provisions of the zoning ordinance that are not contrary to public interest where the board determines that a literal interpretation of the zoning ordinance would result in undue hardship or exceptional practical difficulties to the applicant." *Id*. § 2.1. When doing so, the BOA determines whether "the spirit of the zoning ordinance is observed and substantial justice [is] done." *Id*. The BOA also has certain appellate authority under 22 *Del. C.* §324 and a corresponding City ordinance. As the Court explained in an earlier oral decision, the BOA's authority to hear appeals is limited to appeals of decisions of "administrative officers" of the City which will be addressed in the discussion to follow. There was no right of appeal from the DPC to the BOA for the issues arising in this case.

[5] C.A. No. K23C-12-014 JJC.

The following facts are those alleged in the amended petition in the DPC Action. In addition, some facts that follow derive from the somewhat expanded record necessary to evaluate subject matter jurisdiction. Those included for the latter purpose are considered only for that limited purpose.

Turning to the core dispute, on June 20, 2023, the DPC approved the Plan as submitted by the Patels, with certain adjustments.[6] The DPC then published its approval of the Plan on July 28, 2023.[7] The Plan provides for the construction of two six-story mid-rise apartment buildings by the Patels, to be known as the College Road Apartments, located "north of, but not adjacent to College Road, and east of Railroad corridor in the vicinity of Raymond Street, Railroad Avenue, and Grove Street."[8]

The Mishoes, who currently own and operate an apartment complex next to the Patels' proposed apartments, opposed the Plan before the DPC. They contended below, and still contend, that the DPC unlawfully swept their property into the Plan to provide an access road for the Patels' proposed apartments.[9] The Mishoes also contended before the DPC that the Disputed Land had never been lawfully dedicated to the City of Dover. The Mishoes further asserted that the Disputed Land was never properly annexed by the City.[10]

Regarding the issue of ownership between the Mishoes and the City of Dover, Dover's Solicitor had opined that the Disputed Land was dedicated to the City by

---

[6] Am. Pet. for Writ of Cert. at ¶ 1 (D.I. 46). The date of publishing becomes the anchor date for the Rule 12(b)(6) portion of the Court's analysis.

[7] Mot. to Dismiss, Ex. B (D.I. 21)

[8] The parcel identification numbers for the Patels' property are ED-05-067.00-02-53.00-000, ED-05-067.00-02-54.00-000, ED-05-067.00-02-55.00-000, and ED-05-067.00-02-56.00-000. *Id.*

[9] The parcel identification number for the Mishoes' property is 2-00-067.00-01-17.00/000. *Id.* at ¶ 2. Kent County Tax Mapping also identifies this property as "Parcel 17." *Id.*

[10] *Id.* at ¶ 8.

5

operation of law more than one hundred years ago.[11]  In a letter preceding the DPC's decision regarding the Plan, the Solicitor provided the following opinion:

> [t]he portions of these streets subject to the annexation referendum, were laid out in a recorded plot of the College Settlement Company plotted and recorded in 1899.  By recording the plot these streets automatically became dedicated to public use, and ownership would have been transferred to the City of Dover confirmed by prior annexations from 1973 to 2006.[12]

Pursuant to City of Dover Ordinance No. 2021-23, the City of Dover amended its zoning map to include the Disputed Land prior to the entry of the Plan.[13]

At a public hearing, the DPC considered the Solicitor's opinion, the assumption that the land was within City limits, and the DPC attorney's opinion that the DPC had no jurisdiction to resolve the ownership dispute.  It then approved the Plan over the Mishoes' objections.[14]

Almost immediately after the DPC issued its decision, the Mishoes attempted to appeal the decision to the City of Dover Board of Adjustment (hereinafter the "BOA") under 22 *Del. C.* § 324.[15]  With the appeal to the BOA pending for one day, the Mishoes filed their first action in Superior Court—the DPC Action.[16]  In the DPC

---

[11] *Id*. at ¶ 7; Stipulated R., Subfolder 6, DPC Meeting 4-17-23, S-23-06.

[12] Compl., Ex. C (D.I. 1 in K23C-12-014).

[13] *See* DOVER, DEL., ORDINANCE No. 2021-23 (Dec. 13, 2021) (providing "[t]hat from and after the passage and approval of this ordinance the Zoning Map of the City of Dover have been amended by including Improved and Unimproved Right-of-Way on that property located at Raymond Street (aka Jason Street), Railroad Avenue, and Grove Street (Right-of-Way located northeast of the intersection of College Road and the Lands of Delmarva Railroad) consisting of 1.6791 acres").

[14] Stipulated R., Subfolder 7, DPC Meeting 6-20-23, S-23-06.

[15] Notice of Appeal (D.I. 1 in K23A-10-001 JJC).  22 *Del. C.* § 324 provides that "[a]ppeals to the board of adjustment may be taken by any person aggrieved or by any officer, department, board or bureau of the municipality affected by any decision of the administrative officer.  Such appeal shall be taken within a reasonable time as provided by the rules of the board by filing with the officer from whom the appeal is taken and with the board a notice of appeal specifying the grounds thereof."

[16] Pet. for Writ of Cert. (D.I. 1).

Action, the Mishoes seek to (1) reverse the DPC's approval of the Plan via a writ of certiorari,[17] and (2) obtain a declaratory judgment confirming that they own the Disputed Land by record deed, or alternatively through adverse possession.

The Mishoes, however, named only DPC and JEMM Investors (hereinafter "JEMM") as respondents in their original petition in the DPC Action. There, the Mishoes alleged JEMM to be the prior owner of the Disputed Land and included them as a party for that reason. JEMM is listed as a grantor, along with Eastern Disposal, Inc., in a 1980 quitclaim deed covering the Disputed Land, with the grantees being Luna I. and Hattie B. Mishoe.[18] The Mishoes contend that their title derives from a later recorded 1994 deed that grants them title to the Disputed Land. The Mishoes concede in their amended petition, however, that their title derives more remotely from the 1980 quitclaim deed. To that end, they allege in their petition that "[i]t is unclear whether [Luna and Hattie] Mishoe or JEMM had proper title to the [Disputed Land]."[19] That 1980 quitclaim deed, although obviously not an original deed in any chain of title, was nevertheless presented as such for purposes of Count II.

Even though the Patels presented the Plan that the Mishoes now challenge, the Mishoes did not initially include the Patels in the DPC Action. As a result, the DPC moved to dismiss Count I because the Mishoes did not include them. The DPC also moved to dismiss Count II in the original petition because the DPC contended that the Court had no subject matter jurisdiction over the claim.

---

[17] Under 10 *Del. C.* § 562, "[t]he Superior Court may frame and issue all remedial writs, including writs of habeas corpus and certiorari, or other process, necessary for bringing the actions in that Court to trial and for carrying the judgments of the Court into execution." The Superior Court has concomitant common law jurisdiction to do so, as well.
[18] Mot. for Entry of Default J., Ex. A (D.I. 35).
[19] D.I. 1, at ¶ 17.

The Mishoes then filed their second action in the Superior Court—the BOA Appeal.[20]  While the DPC Action pended in this Court, the BOA refused to accept the Mishoes' appeal from the DPC.  In response, the Mishoes filed the BOA Appeal to challenge that refusal.  As a remedy, the Mishoes asked the Court to remand the matter to the BOA and to direct it to consider their appeal.

The overlap and potential for inconsistency between the DPC Action and the newly filed BOA Appeal became immediately apparent.  For that reason, the Court held an office conference to discuss the most sensible way to order the two actions.  Shortly thereafter, the Court approved the parties' stipulation to address the BOA Appeal before considering the DPC Action.[21]

Third and finally, the Mishoes filed the 1983 Action.  In the 1983 Action, they sue the DPC, Dover City Council, and others, alleging that they deprived them of their property rights when approving the Plan.[22]  The parties then stipulated to staying the 1983 Action as well.[23]  As a result, the order of the litigation settled upon resolving the BOA Appeal first, the DPC Action second, and the Section 1983 Action third.

With the order set, the Court considered the BOA Appeal and dismissed it by oral decision after briefing and argument.[24]  The Court explained in its decision why the BOA had no jurisdiction to hear the Mishoes' appeal and why a common law writ of certiorari in the Superior Court would be the only mechanism available to review the DPC's decision.[25]  An administrative appeal was unavailable in that case

---

[20] D.I. 46, at ¶ 4; *see* C.A. No. K23A-10-001 JJC (wherein the Mishoes appealed the BOA's decision and requested that the Court either remand the matter to the BOA or order the BOA to reverse the DPC's approval of the Plan).
[21] Tr. at 9:4–10 (D.I. 42 in K23C-10-001 JJC).
[22] *See* C.A. No. K23C-12-014 JJC.
[23] Stipulation to Stay Proceedings (D.I 27 in K23C-12-014 JJC).
[24] Order Dismissing Appeal (D.I. 39 in K23C-10-001 JJC).
[25] Tr. at 8:3–6 (D.I. 42 in K23C-10-001 JJC).

because an administrative agency, such as the BOA, has no power to hear an appeal from another municipal agency absent legislative authorization to do so.[26] Thus, the BOA committed no error of law by refusing to accept the appeal because there was no such legislative authorization.[27] The Court then dismissed the BOA Appeal.[28]

The Court then turned to the DPC Action. It considered the motion to dismiss the petition in its *original* form—that is, before the Mishoes' current attempt to add the Patels and the City of Dover as respondents. The DPC asked the Court to dismiss Count I in the original petition because it did not include the Patels. When doing so, the DPC emphasized that the Patels will benefit from the Plan and should have been included in any appeal challenging its final disposition. The Mishoes countered that they believed they owned the Disputed Land, which was the subject of the dispute, and need not have included the Patels in the claim because they were not the "landowners." In other words, the Mishoes contended that only they and the DPC were necessary parties.

In a second oral decision, the Court explained why the Patels were necessary parties and should have been included as respondents.[29] Given that defect, and the fact that the relevant statute of repose had long since lapsed,[30] the focus turned to whether an amendment to include the Patels would be futile. After considering the

---

[26] *Id.* Pursuant to the plain language of 22 *Del. C.* § 324, the DPC, a wholly distinct municipal decision-making body, is not an administrative officer. Accordingly, absent legislative intent to the contrary (meaning from the General Assembly or *perhaps* the Dover City Council), the BOA does not possess jurisdiction to hear an appeal from a decision of the DPC.

[27] Tr. at 8:7–12 (D.I. 42 in K23C-10-001 JJC).

[28] D.I. 39 in K23C-10-001 JJC.

[29] Tr. at 4:16–5:16 (D.I. 45).

[30] Pursuant to 10 *Del. C.* § 8126(b), "[n]o action, suit or proceeding in any court, whether in law or equity or otherwise, in which the legality of any action of the appropriate county or municipal body finally granting or denying approval of a final or record plan submitted under the subdivision and land development regulations of such county or municipality is challenged . . . shall be brought after the expiration of 60 days from the date of publication in a newspaper of general circulation in the county or municipality in which such action occurred, of notice of such final approval or denial of such final or record plan."

parties' positions, the Court declined to find futility at that point because of Superior Court Rule 15's relation back mechanism.[31] In the interests of judicial economy, and to mitigate delay, the Court provided the Mishoes thirty days to amend their petition to add necessary parties, but emphasized that Count I would be dismissed with prejudice if they did not.[32] The Court also expressly recognized that any party who the Mishoes might add by amendment would retain the right to oppose the amendment's relation back.[33]

DPC further moved to dismiss Count II of the original petition for lack of subject matter jurisdiction. To that end, DPC contended that Count II inescapably implicated the need to examine extrinsic evidence. That, DPC contended, made the claim a quiet title action cognizable only in equity. In response, the Mishoes relied upon the preference of Delaware courts to adjudicate title disputes at law, rather than in equity. They also rested on the remedies at law they had requested in Count II— a declaration that they own the Disputed Land because they possessed clear title, or in the alternative, adversely possessed it.

After the Court considered DPC's motion to dismiss Count II, the Court declined to find that it had no subject matter jurisdiction over the claim because the Mishoes pled two remedies at law.[34] As a result, the Court denied DPC's motion to dismiss Count II with the qualification that the Court would lack jurisdiction if the need to rely upon extrinsic evidence became apparent.[35]

The Mishoes then filed an amended petition. In it, they added the Patels and the City of Dover as respondents.[36] Now, the newly added parties move to dismiss

---

[31] D.I. 45, at 11:5–12.
[32] *Id.* at 14:9–15:3.
[33] *Id.* at 8:11–16.
[34] *Id.* at 13:9–14.
[35] *Id.* at 13:1–8.
[36] D.I. 46.

10

the claims against them. They contend that the claims against them in Count I are untimely under the statute of repose because they do not relate back to the original filing. They also contend, as the DPC did during its motion to dismiss the original petition, that the Superior Court has no subject matter jurisdiction over Count II.

On December 9th and 19th of 2024, the Court held oral argument on the motions to dismiss the amended petition. By then, the inquiry had settled upon (1) whether the attempt to add the Patels as respondents related back to the initial filing of more than one year prior; and (2) whether the Court had subject matter jurisdiction over Count II because (a) the deeds relied upon by the Mishoes do not alone demonstrate clear title to the Disputed Land, and (b) the Mishoes have already interjected significant extrinsic evidence into the inquiry.

As a final procedural matter, the Mishoes moved for default judgment against JEMM while the Court navigated the above-mentioned filings.[37] In their motion for default judgment, the Mishoes seek a declaratory judgment against JEMM clarifying that they own the land based upon a clear chain of title, or alternatively through adverse possession. All responding parties oppose the entry of judgment by default. In part, they allege possible self-dealing between the Mishoes and JEMM. They further contend that the entry of judgment against JEMM, who is a *possible* prior owner of the property, would unfairly prejudice their ability to present extrinsic evidence as to ownership. That effect, they assert, would unfairly prejudice their attempt to defend the Plan's lawfulness.

## II. APPLICABLE STANDARDS

The City Respondents and the Patels move to dismiss Count I of the amended petition on two bases: (1) the Patels are indispensable parties to certiorari review, and (2) it is impossible to include the Patels because the applicable statute of repose

---

[37] D.I. 35.

11

bars the Mishoes from doing so. The City Respondents and the Patels also move to dismiss Count II for lack of subject matter jurisdiction. The following standards—which are placed in the context of the current motions and addressed in the order they are discussed—control the Court's decision.[38]

On a Rule 12(b)(7) motion to dismiss for failure to join a party under Rule 19, the Court must determine whether the joinder of missing parties is needed for just adjudication. That inquiry is threefold.

First, the Court must determine whether the missing party who the petitioner seeks to join is a "necessary party."[39] A party is regarded as necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.[40]

Second, Rule 19(b) requires the Court to determine if the necessary party can now be added to the action. Rule 12(b)(6) becomes relevant to this part of the analysis because of the statute of repose. Namely, the Court has no power to consider challenges to the actions of an agency or governmental subdivision after the statutory period for seeking review has expired.[41] In that way, an applicable statute of repose

---

[38] The Court notes that when applying these standards, the scope of the Court's review is at times expanded for Superior Court Civil Rule 12(b)(1) purposes and at other times constrained under Rule 12(b)(6) and 12(b)(7).

[39] Super. Ct. Civ. R. 19(a).

[40] *Id*.

[41] A statute of repose "bar[s] any suit that is brought after a specified time since the defendant acted, even if this period ends before the plaintiff has suffered a resulting injury." STATUTE OF REPOSE, Black's Law Dictionary (12th ed. 2024). "[T]he period contained in a statute of repose begins when a *specific event* occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." 54 C.J.S. *Limitations of Actions* § 4, at 20–21 (1987) (emphasis added).

limits the time by which an appeal or challenge can be filed. In other words, a petitioner does not state a claim upon which relief may be granted after that period has passed.

Third and finally, if a statute of repose precludes adding a party, the Court must determine if the missing party is needed for just adjudication. If the party is a necessary one and joinder is not possible, the final focus becomes whether the action can proceed in that party's absence. Put differently, is the party indispensable? To answer that question, the Court must consider "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."[42]

The question of indispensability is answered after considering the four factors enumerated in Rule 19(b). Those factors include:

> [f]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; [and] fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.[43]

After applying the factors, if the claim cannot continue without the necessary party, then it must be dismissed.

Finally, the Respondents' challenges to Count II based upon subject matter jurisdiction fall under Superior Court Civil Rule 12(b)(1). It is axiomatic that "because subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt."[44] As the controller

---

[42] Super. Ct. Civ. R. 19(b).
[43] *Id.*
[44] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 (Del. 2007) (quoting *Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 76–77 (3d. Cir.2003)).

of a complaint or a petition, the plaintiffs—or here, the petitioners—bear the burden of demonstrating subject matter jurisdiction.[45] When reviewing the Court's subject matter jurisdiction over Count II, the Court may consider facts and documents beyond the pleadings.[46]

### III.  ANALYSIS

As explained below, the Patels are necessary parties to Count I.  Here, the Mishoes (1) failed to include them within the time provided in the statute of repose for challenging land use and planning decisions, (2) the attempted amendment to add them now does not relate back, and (3) the original claim against the DPC in Count I cannot proceed in equity and good conscience without the Patels.  As a result, Count I must be dismissed with prejudice.

As to Count II, the deeds the Mishoes rely upon do not demonstrate ownership by clear title through any reasonable set of circumstances susceptible of proof.  Furthermore, the Mishoes have attached significant extrinsic evidence to their petition, their amended petition, the briefing, and their motion for default judgment against JEMM.  In combination, their pleadings and exhibits demonstrate the need for a court to consider extrinsic evidence to determine who owns the Disputed Land.  While the Mishoes' may later be determined to be the owners of the Disputed Land, they can neither prevail, nor fail to prevail, based upon a facial review of the deeds they identify as supporting their claim.  Only a quiet title action heard in the Court of Chancery can resolve the dispute.

Finally, as also explained below, the Mishoes alternative claim for adverse possession falls within the Court of Chancery's ancillary jurisdiction.  That claim

---

[45] *FeraDyne Outdoors, LLC v. Reaser*, 2023 WL 9094423, at *5 (Del. Super. Dec. 20, 2023) (citing *Hurtt v. Del Frisco's Rest. Grp.*, 2019 WL 2516763, at *2 (Del. Super. June 18, 2019)).

[46] *Agahi v. Kelly*, 2024 WL 1134048, at *3 (Del. Super. Mar. 15, 2024) (citing *FeraDyne Outdoors, LLC*, 2023 WL 9094423, at *5).

will implicate much of the same evidence necessary in a quiet title action and cannot practically be severed under the circumstances of this case. As a result, Count II must be dismissed in its entirety to avoid possible inconsistent and incompatible results.

### A. Count I must be dismissed because the Patels are indispensable parties who cannot feasibly be joined.

The City Respondents and the Patels seek to dismiss Count I of the Mishoes' amended petition for failure to join indispensable parties. They rely on the premise that a landowner who is directly affected by an appellate ruling on the merits is a necessary party to that appellate action.[47] Here, they emphasize that the Mishoes did not attempt to add the Patels to the action until almost a year after the statute of repose expired. In response, the Mishoes emphasize that they believe themselves to be the only relevant landowners because they, not the Patels, own the Disputed Land.

At the highest level, the Mishoes view is too narrow because it fails to acknowledge that the Patels are landowners who benefitted from the Plan that the Mishoes now challenge. More granularly, their view is too narrow for two specific reasons: controlling authority has already considered the issue, and a straightforward application of Superior Court Civil Rule 19(a)(2) demonstrates that the Patels are necessary parties.

First, the Delaware Supreme Court directs that "all parties to the litigation, who would be directly affected by a ruling on the merits of an appeal, should be

---

[47] It is well settled in Delaware that any party to an appeal who would be directly affected by an appellate ruling should be made a party thereto. *Covey v. Cnty. Bd. of Adjustment of Sussex Cnty.*, 2002 WL 970469, at *2 (Del. Super. May 7, 2002) (citing *State Personnel Comm'n v. Howard,* 420 A.2d 135, 137 (Del.1980)). The Court has no discretion to disregard this rule because it "is a fundamental question of jurisdiction, which cannot be waived by the parties or disregarded by the appellate court, and the latter has no power to hear and determine a case unless all the parties directly affected by the judgment . . . are brought before it." *Sussex Med. Invs., L.P. v. Delaware Health Res. Bd.*, 1997 WL 524065, at *2 (Del. Super. Apr. 8, 1997) (quoting 4 C.J.S. *Appeal and Error* § 232 (1993)).

made party to the appellate proceedings."[48] Given that recognition, "the failure to name an indispensable party to an appeal from an administrative agency to the Superior Court is not an amendable defect."[49] Granted, a petition for a common law writ of certiorari differs in many respects from an appeal. Nevertheless, the beneficiary of that successful land use application must be included in a certiorari action for the same reason he or she must be included in an appeal.[50] For that reason, the question of whether it was necessary to include the Patels in this appeal can be answered through a shorthand analysis—that is, *a successful applicant for a land use application must have the opportunity to participate in an appeal or petition for writ of certiorari seeking to overturn that approval.* Due process guarantees no less.

Second, an independent application of Rule 19(a)(2) compels the same result. Namely, the omission of the Patels—the successful applicants—from the amended petition would not merely impair their ability to protect their interest in the approved Plan. It would preclude their ability to do so. For that reason, the Patels are necessary parties to the action. Based upon mandatory authority and a

---

[48] *CCS Inv'rs., LLC v. Brown*, 977 A.2d 301, 322 (Del. 2009) (citations omitted); *see also Preston v. Bd. of Adjustment of New Castle Cnty.*, 772 A.2d 787, 789–90 (Del. 2001).

[49] *Hackett v. Bd. of Adjustment of City of Rehoboth Beach*, 794 A.2d 596, 598 (Del. 2002); *see Allmaras v. Bd. of Adjustment of Sussex Cnty.*, 248 A.3d 105, 107 (Del. Super. 2019), *aff'd*, 238 A.3d 142 (Del. 2020) (recognizing that "Delaware courts [have] routinely held that the failure to timely join the landowner is a fatal jurisdictional defect"); *Schlosser and Dennis, LLC v. City of Newark*, 2016 WL 2766119, at *4 (Del. Super. May 9. 2016) (explaining that "[t]he notice of appeal cannot be amended to add a party after the appeal period has lapsed because the time period for perfecting an appeal is jurisdictional"). Because the Superior Court and Supreme Court decisions in *Allmaras* will be addressed herein, for ease of reference, the Court will designate the former as "*Allmaras I*" and the latter as "*Allmaras II.*"

[50] *See Hackett*, 794 A.2d at 598 (affirming the Superior Court's ruling that "the failure to name the property owner was a fatal defect in the appellate review process . . ."); *CCS Inv'rs, LLC*, 977 A.2d at 322 (holding that "the owner of land that is the subject of a decision of a municipal board of adjustment is a necessary party that must be joined in an appeal of that decision").

straightforward application of Rule 19(a)(2), the Patels must be made parties and joined if feasible.[51]

The next relevant inquiry becomes whether the Patels, as necessary parties, can now be joined by amendment. Section 8126 of Title 10 of the Delaware Code provides the statute of repose that prescribes the time limit during which county and municipal zoning and planning actions may be challenged. Specifically, subsection (b) of Section 8126 prescribes a sixty-day period for challenging municipal actions, such as the approval of a development plan.[52] That sixty-day period begins on the day the municipality publishes the result—here, July 28, 2023.[53]

In this case, the Mishoes filed their initial petition in the DPC Action on July 19, 2023. That occurred before the DPC published its decision and demonstrates that they had actual notice of the decision even before publication. The Mishoes, however, did not file their amended petition to add the Patels as respondents until July 2024. That occurred more than nine months after the statutory period had passed.

Consequently, the Patels may only be joined at this juncture if the claims in the amended petition relate back to the original filing. Under appropriate circumstances, Superior Court Civil Rule 15 permits amended pleadings to "relate back" to the original filing date to satisfy an applicable statute of repose or limitations.[54] Germanely, Rule 15(c)'s relation back principles apply to amendments

---

[51] *See also* D.I. 45 (providing the Court's earlier oral decision explaining why the Patels must be joined if feasible).
[52] 10 *Del. C.* § 8126(b).
[53] Mot. to Dismiss, Ex. B (D.I. 21).
[54] *Id*.

of all pleadings, including petitions for writs of certiorari filed to challenge land use decisions.[55]

Under Superior Court Civil Rule 15(c)(3), an amended pleading that adds a party relates back to the original filing date when three requirements are satisfied:

> (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading;

> (ii) the party to be brought in by amendment has received such notice of the pending action, within 120 days of the expiration of the statutory period, that the party will not be prejudiced in maintaining a defense on the merits; and

> (iii) the party to be brought in by amendment knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[56]

Here, the claims against the Patels meet the first and second requirements.[57]

The parties disagree, however, regarding whether the Mishoes meet Rule 15(c)(3)'s reference in the third requirement to "a mistake concerning the identity of the proper party." The Patels contend that the Mishoes knew exactly who they were. They frame the Mishoes mistake as a misunderstanding about who they should have included in the first instance.[58] To this end, the Patels contest the relation back because they insist Rule 15(c)(3)(B) does not countenance such a mistake.[59] The

---

[55] *See* Super. Ct. Civ. R. 15(c) ("[a]n amendment of a *pleading* relates back"); *see also Brown v. City of Wilmington Zoning Bd. of Adjustment*, 2007 WL 1828261 (Del. Super. June 25, 2007) (recognizing that the relation back principles of Rule 15(c) apply to petitions for certiorari review).

[56] *Allmaras II*, 2020 WL 4669008, at *2 (Del. Aug. 7, 2020) (citing Super. Ct. Civ. R. 15(c)).

[57] The Patels did not dispute the first requirement. While they dispute the second, they do not contest that their attorney, who represented them in the application before the DPC and whose law firm acted as their registered agent, received a copy of the original petition from the Mishoes within 120 days of the expiration of the statutory period, on August 17, 2023. Accordingly, the Mishoes demonstrate, for Rule 12(b)(6) purposes, that they provided notice of their petition for writ of certiorari to the Patels, care of their registered agent, Parkway Law, within 120 days of the expiration of the statute of repose. Answering Br. at 27 (D.I. 72).

[58] D.I. 66, at 16.

[59] *Id*.

18

Mishoes counter with the admission that they misunderstood which landowner should have been included in the original petition. That is, they believed themselves to be the only *relevant* landowner necessary for the action.[60] Such a mistake, they argue, is countenanced by the Rule.

There is a divergence of authority nationally regarding the nature of a mistake necessary to satisfy this requirement.[61] Some jurisdictions, including the federal system, take a lenient approach and focus on whether the *defendant* knew or should have known there was a mistake.[62] That more lenient approach also applies a broader definition of what is considered a mistake. It includes *any* "error, misconception, or misunderstanding, [or] erroneous belief."[63] In the federal system, the United States Supreme Court held in *Krupski v. Costa Crociere S.p.A.* that when a plaintiff sues the wrong party based on *her own mistake*, she has made a "mistake concerning the proper party's identity" even if she had full knowledge that the relevant potential defendant existed. Under the approach articulated in *Krupski*, the reasonableness of the mistake has no relevance.[64] Frankly, were the Court to apply the *Krupski* decision's approach in this case, the Mishoes' amendment would relate back.

Other jurisdictions apply a much stricter approach. They focus solely on the state of mind of the *plaintiff*. They further interpret their version of Rule 15(c) to

---

[60] D.I. 72, at 31.

[61] *See* 6A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1498.3 (3d ed.) (recognizing that the "mistake concerning the proper party's identity" requirement has caused problems amongst courts because "not all mistakes by plaintiffs are covered by the rule"); *see also* 61B Am. Jur. 2d Pleading § 754 (2025) (recognizing that within the Federal Rule 15 context, the term "mistake" has been the source of jurisdictional conflict regarding the type of mistake contemplated).

[62] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010).

[63] *Id*. (quoting Black's Law Dictionary 1092 (9th ed. 2009)).

[64] *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010) (explaining that under Federal Rule 15(c)(1)(C)(ii), which the Delaware Rules of Civil Procedure mirror, "[t]he reasonableness of the mistake is not itself at issue").

apply only to circumstances where the plaintiff misunderstood the proper party's true identity, as opposed to situations where the plaintiff knew the proper party existed but mistakenly chose not to include that party.[65]

Delaware courts have consistently applied the stricter approach.[66] In fact, the Delaware Supreme Court reaffirmed Delaware's commitment to this approach even after the United States Supreme Court issued its decision in *Krupski*. At first, the Delaware Supreme Court declined the opportunity to revisit Delaware's approach to the issue in *DiFebo v. Board of Adjustment of New Castle County*.[67] It did so there because the parties failed to timely raise the issue.[68] In *DiFebo*, however, the Court nevertheless expressed its willingness to reconsider the matter, in light of *Krupski*, if properly raised in a future proceeding.[69]

More recently, the Delaware Supreme Court declined to change Delaware's approach when presented the opportunity in an appeal from the Superior Court. Namely, in *Allmaras v. BOA* ("*Allmaras I*"), the Superior Court considered a challenge to the Sussex County Board of Adjustment's approval of an application

---

[65] *See* 61B Am. Jur. 2d Pleading § 754 (2025) (explaining that in rejecting the more lenient approach, the stricter rule followed by other jurisdictions holds that "an amendment will not relate back where the plaintiff made no mistake concerning the defendant's identity, but merely chose the wrong party to sue, or sued a nonexistent person"); *see e.g.*, *Wilson v. U.S. Gov't*, 23 F.3d 559, 563 (1st Cir. 1994) (finding that an amended pleading did not relate back because Rule 15(c)(3) "permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, *there is a lack of knowledge of the proper party*" (citation omitted)); *Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 746 F. Supp. 40 (D. Kan. 1990) (holding that relation back did not apply because the plaintiff was aware of the potential defendant, but "simply unsure about that party's potential liability").

[66] *See e.g.*, *CCS Inv'rs, LLC*, 977 A.2d at 313 (explaining that Delaware follows the strict approach to Rule 15(c)'s mistaken identity requirement); *Brown*, 2007 WL 1828261, at *11 (stating "Delaware courts follow the strict approach").

[67] 132 A.3d 1154 (Del. 2016).

[68] *Id*. at 1159.

[69] *Id*.

20

for a special use exception to operate a convalescent home.[70] There, the Board granted the application.[71] An aggrieved party, who opposed the application below, filed a petition for writ of certiorari in the Superior Court, but named only the Board as a respondent.[72]

The Board then moved to dismiss the petition. It contended that the Superior Court had no jurisdiction over the matter because the petitioners failed to name the landowner, who was the successful applicant below. In response, the petitioner sought leave to amend their petition to remedy the defect by naming the landowner and have it "relate-back" as a timely filing under Rule 15(c).[73]

The Superior Court then considered whether the petitioner knew the landowner's identity. The court relied on the Delaware Supreme Court's holding in *DiFebo* for the proper framework.[74] In that way, the court applied longstanding Delaware precedent—the "strict approach"—to what constitutes a mistake under Rule 15(c). Specifically,

> a mistake occurs when the petitioner makes a true mistake as to the identity or name of the proper party as opposed to where the plaintiff merely chose the wrong party to sue. That is, Delaware courts generally decline to find a mistake when the plaintiff cannot demonstrate an intent to include the unnamed party before the limitations period expired but will find a mistake if the plaintiff intended to sue certain parties but was misled as to the identity of those parties.[75]

The court in *Allmaras I* then found that the petitioners had made no mistake regarding the landowner's identity.[76] As in the Mishoes' case, the *Allmaras* petitioners had "made a mistake as to whether or not the clearly identified

---

[70] 248 A.3d 105, 107 (Del. Super. 2019), *aff'd*, 238 A.3d 142 (Del. 2020).
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.* at 109.
[75] *DiFebo*, 132 A.3d at 1158 (quoting *CCS Inv'rs, LLC*, 977 A.2d at 313).
[76] *Allmaras I*, 248 A.3d at 110.

21

[l]andowner had to be named as a party in the first instance."[77] As a result, the court denied the petitioners' motion to amend and granted the Board's motion to dismiss because the movant failed to satisfy the "mistaken identity" requirement of Rule 15(c)(3)(B).[78]

In *Allmaras II*, the Delaware Supreme Court affirmed the lower court's application of the strict requirement.[79] When it did, it expressly declined to apply *Krupski* in a manner that changed Delaware's approach.[80] That settles the matter as to whether the *Krupski* decision regarding the parallel federal rule changes Delaware's position. It does not. The nature of relevant mistakes under Rule 15(c)(3)(B) is limited in the strictest sense to mistakes regarding *the identity* of the proper party, as opposed to mistakes where a plaintiff misunderstood who he should have sued.[81]

In this case, the Mishoes knew the Patels' identity well before they filed the DPC Action. At the outset, the Mishoes appeared adversely to the Patels before the DPC.[82] The Mishoes' original petition further demonstrates that they harbored no mistake about the Patels' identity. There, they alleged that: "[p]etitioners are the persons aggrieved by a decision of the City of Dover Planning Commission under a resolution voted upon on June 20, 2023 . . . *which decision allegedly approved the application of Patel College Properties, LLC and Patel Excess College Road, LLC*

---

[77] *Id*.; *see also Vondrasek v. Board of Adjustment of the City of Wilmington*, 2017 WL 1735402 (Del. Super. May 1, 2017) (holding, under a similar set of facts as in *DiFebo*, that appellants' petition for writ of certiorari did not relate back because "the mistake of not naming the [land]owner was not a mistake recognized under Rule 15 in Delaware").

[78] *Allmaras I*, 248 A.3d at 110.

[79] *Allmaras II*, 2020 WL 4669008, at *2

[80] *Id*.

[81] *Id*.

[82] *See* D.I. 72, at 3, 30–31 (admitting that since the initiation of this action, the Mishoes "have not opposed [the Patels'] use of [their] own property" and that the Patels "would certainly have an interest in the outcome of this litigation"). Such statements indicate knowledge of the Patels' respective position within this litigation.

for a Site Development Plan."[83]  Furthermore, the Mishoes admitted in their initial response to DPC's motion to dismiss that they had experienced a "pleading dilemma" as to whether the Patels should be named in the caption, or not.[84]  That dilemma does not qualify as a mistake regarding the Patel's identity under the mandatory authority of *DiFebo* and *Allmaras II*.  As a result, the Mishoes do not meet their burden of demonstrating a countenanced mistake and the Patels cannot now be added as parties.

The final question settles on what the Court must do in the Patel's absence. The answer to that depends on whether the Court can "in equity and good conscience" proceed with the parties presently before it.[85]  In other words, are the Patels indispensable parties to the action?

While Rule 19(b) includes four factors relevant to the inquiry, controlling authority simplifies the analysis.  Namely, the Delaware Supreme Court's rulings in *Hackett v. BOA* and *CCS Investors, LLC v. Brown* provide that when a party fails to name an affected landowner in a land use decision challenge, the Court has no jurisdiction to consider the challenge.[86]  Such an omission deprives the Court of jurisdiction which cannot be overcome through a Rule 19(b) balancing test.[87]

Applying the four factors in Rule 19(b) would nevertheless compel the same result in this case.  Here, (1) the Patels will unquestionably be prejudiced if they are precluded from participating in a challenge seeking to invalidate *their* Plan, (2) no severance of portions of the petition for certiorari or the subsequent shaping of relief can remedy that prejudice; (3) there can be no adequate resolution in their absence,

---

[83] D.I. 1, at 1–2 (emphasis added).
[84] Pet'r's Resp. to Mot. to Dismiss at ¶ 7 (D.I. 25).
[85] Super. Ct. Civ. R. 19(b).
[86] 794 A.2d 596, 598 (Del. 2002); 977 A.2d 301, 322 (Del. 2009).
[87] *Schlosser and Dennis, LLC*, 2016 WL 2766119, at *7 (expressly recognizing that the Delaware Supreme Court's holdings in *Hackett* and *CCS Investors, LLC* stand for this proposition).

23

and (4) they will have no alternative means to challenge this Court's decision if they are precluded from participating in the matter.[88]

On balance, this certiorari action cannot proceed without the participation of the adjacent landowner who benefits from the very site development plan challenged by the action. Count I of the Mishoes amended petition for a writ of certiorari must therefore be dismissed with prejudice.

**B. The Superior Court does not have subject matter jurisdiction over Count II because it implicates extrinsic evidence beyond record title and the adverse possession claim is too intertwined to separate from the primary claim.**

In Count II, the Mishoes seek to confirm ownership by clear title, or in the alternative, by adverse possession. The City Respondents and the Patels move to dismiss those claims for lack of subject matter jurisdiction. They contend that the claims will require the Court to consider extrinsic evidence, which in turn, converts Count II to a quiet title claim. That, they emphasize can only be entertained in the Court of Chancery.[89]

The Mishoes counter with the contention that the Court could resolve Count II by reviewing the 1994 deed, along with prior and subsequent deeds in the chain of title. They further posit that the Court would separately remain free to consider extrinsic evidence under their alternative adverse possession theory.

---

[88] *See* Super. Ct. Civ. R. 19(b) (providing that, "[t]he factors to be considered by the Court include: First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder").

[89] "It is settled in this state that the Court of Chancery has subject matter jurisdiction over those quiet title actions where the alleged cloud may be cleared only by the examination of extrinsic evidence." *Cedar Lane Farms, Inc. v. Taylor*, 1992 WL 111210, at *2 (Del. Ch. May 18, 1992) (citing *Wilkes v. State ex rel. State Highway Dep't*, 265 A.2d 421, 424 (Del. 1970)).

At the outset, Delaware courts maintain a strong preference for determining title at law.[90] Such controversies include situations where a chain of title demonstrates clear ownership *or* lack thereof, on its face. When neither is the case, the dispute can only be resolved in equity.[91] The primary dispute, therefore, distills to whether the deeds in this case can resolve the ownership issue without the need to consider extrinsic evidence.

The controlling authority explaining which land ownership disputes belong in equity and which at law is the Delaware Supreme Court's decision in *Wilkes v. State ex rel. Highway Department*.[92] The *Wilkes* decision explains both (1) equity's jurisdiction over quiet title actions, and (2) provides appropriate parameters for when Chancery's ancillary jurisdiction requires that court to resolve the entire matter.

In *Wilkes*, the parties, the State among them, litigated ownership rights where there were conflicting claims based upon separate chains of title.[93] There, the Court of Chancery had assumed jurisdiction after recognizing that "extrinsic evidence would be required in order to determine the nature of the cloud upon [the State's] title."[94] The appellant had contested Chancery's jurisdiction below and renewed its challenge to it on appeal. The Supreme Court, with particular reliance on Court of

---

[90] *See e.g.*, *Davenport Servs., Inc. v. Five N. Corp.*, 2003 WL 21739066, at *5 (Del. Super. May 19, 2003) ("Delaware courts strongly favor a determination of title at law"); *Burris v. Cross*, 583 A.2d 1364, 1377 (Del. Super. 1990) ("[n]ormally actions to determine title to land are actions at law"); *Green v. Cowgill*, 61 A.2d 410, 411 (Del. Ch. 1948) ("decisions in this state indicate a decided preference for a legal determination of title disputes").

[91] 4 JOHN N. POMEROY, EQUITY JURISPRUDENCE § 1399 (5th ed. 1941) ("if the defect appears upon its face, and a resort to extrinsic evidence is unnecessary, the reason for equitable interference does not exist, for it cannot be said that any cloud whatever is cast upon the title"); *see also Davenport Servs., Inc.*, 2003 WL 21739066 ("equity jurisdiction does not exist in an action to remove a cloud if the instrument or proceeding is invalid on its face . . . [because] [i]n those instances . . . the facially invalid instrument or proceeding is not a 'cloud' on title").

[92] 265 A.2d 421 (Del. 1970).

[93] *Id*. at 423.

[94] *Id*. at 422.

Chancery decisions such as *Suplee v. Eckert,*[95] explained that "if an alleged cloud involves disputes which can be resolved only by extrinsic evidence lying outside the record, or if the invalidity of a recorded instrument must be established by matters outside the record, then equity has jurisdiction to try the cause."[96] Accordingly, only Chancery has subject matter jurisdiction over a quiet title action.

When turning to the appropriate parameters of Chancery's ancillary jurisdiction, the *Wilkes* Court recognized that where a question of legal title is intertwined with other aspects of the controversy, which themselves require the exercise of equitable jurisdiction, "the legal matters should be regarded as ancillary and equity should take and retain jurisdiction over the entire matter."[97]

A more recent Superior Court decision in *Cook v. Deep Hole Creek Associates*[98] is also helpful when applying these principles. In *Cook*, the plaintiffs sought a judgment to declare ownership based upon what was alleged to be a clear chain of title reflected in the deeds.[99] There, the plaintiffs traced their alleged title to the disputed property through reference to several recorded deeds.[100] Critically,

---

[95] *Suplee v. Eckert*, 120 A.2d 718 (1956). *Suplee* involved a dispute concerning matters of record in which the plaintiffs claimed title through a sheriff's deed, and the defendants through a tax deed. *Id*. at 430. The defendants moved to dismiss, *inter alia*, on the ground that the Court of Chancery could not "properly try an action to remove a cloud where the plaintiff has an adequate remedy at law." *Id*. In explaining the bases for equitable jurisdiction, the court reiterated longstanding Delaware jurisprudence recognizing "[e]quity's jurisdiction over actions to remove a cloud on the title to real estate." *Id*. In contrast, the court in *Suplee* also recognized that "it is true in Delaware that when the alleged cloud arises from a matter of record as opposed to a circumstance which must be proved by extrinsic evidence, equity will leave the plaintiff to his law action, unless some other basis of equity jurisdiction appears." *Id*. (citing *Murphy v. City of Wilmington*, 11 Del. 108, 134–37 (1880)).

[96] *Wilkes*, 265 A.2d at 424.

[97] *Id*. at 425. (citing 4 JOHN N. POMEROY, EQUITY JURISPRUDENCE § 1399 (5th ed. 1941); *Sears v. Scranton Trust Co*., 77 A. 423 (1910)).

[98] 2021 WL 1561410 (Del. Super. Apr. 21, 2021)

[99] *Id*. at *5. The plaintiffs in *Cook* described their claim as one to quiet title but the recitation of facts in the decision demonstrates that they attempted to establish ownership by only referring to deeds evidencing the chain of title.

[100] *Id*. at *5.

their complaint discussed matters beyond the record, however, which raised both doubts about their ownership claims and demonstrated the need for the court to consider extrinsic evidence.[101] As a result, the court granted the defendant's motion to dismiss for lack of subject matter jurisdiction. When doing so, it reiterated the rule that the Court of Chancery "has subject matter jurisdiction over those quiet title actions where the alleged cloud [upon title] may be cleared only by the examination of extrinsic evidence."[102]

Here, a court will need to examine extrinsic evidence to resolve count II. Four circumstances compel that finding.

First, the Mishoes' amended petition itself demonstrates the need. The Mishoes' claim of record ownership revolves around a 1994 deed under which Hattie B. Mishoe purportedly conveyed title to the Disputed Land to the Mishoe Trust.[103] Other deeds followed with a purported conveyance to the Mishoes who now assert ownership and are the parties to this action.[104] Yet, the Mishoes concede in their amended petition that "[i]t is unclear which of [sic] L&H Mishoe or JEMM had proper title to the portion of paper Raymond/Jason Street at issue" prior to the 1994 deed.[105] Their pleading facially demonstrates the need to examine extrinsic evidence to resolve the claim.

Second, the deeds the Mishoes rely upon are facially insufficient to resolve the dispute. Namely, the Mishoes reference several deeds in the chain of title during oral argument and provided them as exhibits in their various filings. Critically, the original deed they proffered, from which the others derive, is merely a stand-alone

---

[101] *Id*.
[102] *Id*. (quoting *Cedar Lane Farms, Inc. v. Taylor*, 1992 WL 111210, *2 (Del. Ch. May 18, 1992).
[103] D.I. 46, at ¶ 19.
[104] *See* D.I. 35, Ex. A.
[105] D.I. 46, at ¶ 19.

27

quitclaim deed with no recital clause to confirm what it conveys.[106] That, alone, in the absence of any preceding deeds in the chain of title, demonstrates a potential defect. Extrinsic evidence will be necessary to resolve the matter.

Third, the Mishoes themselves have interjected a significant amount of extrinsic evidence into the matter. Their exhibits include surveys, correspondence, and other materials apart from the record deeds. Many of those exhibits are "extrinsic."

Fourth and finally, the complexity of this matter requires extrinsic evidence to resolve significant competing claims and crosscurrents regarding ownership. Namely, the City of Dover claims to own the Disputed Land through dedication by operation of law in the 1800s. No deed will accompany that. Furthermore, the complexity in this case is amplified because of the dispute regarding the legality of the annexation of the Disputed Land. In this case, it will be impossible to adjudicate ownership without sifting through these issues and considering extrinsic evidence.

For these reasons, the primary relief requested in Count II sounds in equity. That leaves the final question as to what should be done with the Mishoes' alternative adverse possession claim. That is, should it be severed and decided in this Court, or should it be dismissed for potential resolution in Chancery as an ancillary matter?

An adverse possession claim could admittedly be decided at law when considered in a vacuum.[107] As the Delaware Supreme Court recognized in the *Wilkes* decision, however, where "the question of legal title to . . . the tract in controversy [is] so intertwined with other elements of the controversy, which call for the exercise

---

[106] None of the deeds the Mishoes rely upon, including the operative 1994 deed, were attached as exhibits to their petition. These deeds were instead provided to the Court in an exhibit to their motion for entry of default judgment. *See* D.I. 35, Ex. A.

[107] *See e.g.*, *Davenport Servs., Inc.*, 2003 WL 21739066 (holding that a suit to determine title based upon adverse possession may be maintained in the Superior Court); *Banks v. Schrock*, 2023 WL 1488204 (Del. Super. Feb. 2, 2023) (declaring ownership upon a showing by a preponderance of the evidence that each of the elements of adverse possession had been satisfied).

28

of equitable jurisdiction or relief, then the legal matters should be regarded as ancillary and equity should take and retain jurisdiction over the entire matter."[108]

In this case, there is no meaningful way to sever the Mishoes' alternative claim from Count II and retain jurisdiction over it without risking inconsistent findings. Moreover, one cannot acquire ownership rights against a governmental body such as the City of Dover through adverse possession. [109] That premise, by itself, marginalizes a significant portion of the Mishoes' adverse possession claim and cuts against it being considered independently of any quiet title action. The question regarding annexation also bears upon the propriety of the alleged dedication to the City and adds further complexity to the matter. In this case, trying a quiet title claim in one court while simultaneously trying an accompanying adverse possession claim in another would produce a substantial risk of inconsistent factual findings and results. That risk makes it appropriate, and necessary, for a reviewing court to consider the quiet title action and adverse possession claims together.[110]

---

[108] *Wilkes*, 265 A.2d at 425.

[109] In *Kempner v. Aetna Hose, Hook & Ladder Co.*, the Court of Chancery recognized that prescriptive rights may not be acquired in the property of a municipal corporation where that property is devoted to public use. 394 A.2d 238, 240 (Del. Ch. 1978). The court stated this to be the majority rule in this country and that "nothing is more solidly established than the rule that title to property held by a municipal corporation in its governmental capacity, for a public use, cannot be acquired by adverse possession." *Id*. (quoting *Siejack v. City of Baltimore*, 313 A.2d 843, 846 (Md. 1974)). Furthermore, the court explained that is immaterial whether the property is owned by the state at large, by a county, or by a municipal department or other official body. *Id*. at 241.

[110] Historically, the Court of Chancery has adjudicated adverse possession claims on many occasions even in the absence of such concerns. A recurring theme when recognizing equitable jurisdiction over the claims has been the complexity of the matters which generates in large part the potential need to consider extrinsic evidence. *See e.g.*, *Tumulty v. Schreppler*, 132 A.3d 4 (Del. Ch. 2015) (holding that a defendant had established title to property by adverse possession); *Acierno v. Goldstein*, 2004 WL 1488673 (Del. Ch. June 25, 2004) (deciding a request for a declaratory judgment to quiet title to land based on a claim of adverse possession); *Marvel v. Barley Mill Rd. Homes*, 104 A.2d 908 (Del. Ch. 1954) (holding that plaintiffs had established ownership by adverse possession); *c.f. Futcher v. Dodd*, 1978 WL 22442, at *3 (Del. Ch. June 21, 1978) (refusing jurisdiction in Chancery where (1) a plaintiff is out of possession, (2) has no record title, and (3) where there are no complex circumstances prohibiting complete resolution of the issues at law).

As a final matter, the Mishoes' motion for entry of default judgment in Count II against JEMM remains pending.[111] Like the adverse possession claim, the Mishoes' default judgment motion seeks a declaration by default that they own the property through clear title, or through adverse possession against JEMM. Under the circumstances of this case, the interests of judicial economy and the risk for unfair prejudice to the remaining respondents require deferral of the motion. Namely, because the gravamen of Count II is a quiet title claim, the Mishoes cannot obtain a default judgment against JEMM in the absence of subject matter jurisdiction over that claim. A judgement by default in favor of the Mishoes and against JEMM based upon adverse possession would likewise be inappropriate. That claim against JEMM is so intertwined with the balance of the controversy that it would be premature under the circumstances to grant it.

For these reasons, Count II must be dismissed in its entirety without prejudice. The Mishoes may seek transfer of the claims in Count II to the Court of Chancery under 10 *Del. C.* §1902.[112]

## IV. CONCLUSION

For the aforementioned reasons, Count I of the Mishoes' amended petition must be dismissed because the Mishoes are unable to include the Patels as respondents. Furthermore, the Superior Court lacks jurisdiction over the gravamen of Count II. The remaining theories raised in that Count are too intertwined, complex, and related for the Court to sever and to retain jurisdiction over a part of

---

[111] D.I. 35.

[112] Pursuant to 10 *Del. C.* §1902, "[n]o civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal. Such proceeding may be transferred to an appropriate court for hearing and determination."

them.  As a result, Count II is dismissed in its entirety, without prejudice, subject to 10 *Del. C.* §1902.

    **IT IS SO ORDERED.**


                     /s/Jeffrey J Clark
                         Resident Judge


*Via File & ServeXpress*